## John Deslauries, et al., v. Treffly Soucie, et al.

### Gen. No. 4,549.

1. WRIT OF CERTIORARI—*how issuance of, determined.* The common law writ of *certiorari* is not a writ of right but its issuance is to be determined by the judge in the exercise of a sound judicial discretion.

2. WRIT OF CERTIORARI—*when motion to quash, to be made.* The defendants to a writ of *certiorari* are entitled prior to making return to the writ to move to quash the same and to make a showing in support of such motion.

3. WRIT OF CERTIORARI—*what will not be treated as return to.* The Appellate Court will not treat that as a return to the writ which the trial court did not so treat.

·4. WRIT OF CERTIORARI—*when, properly quashed.* A writ of *certiorari* sued out for the purpose of reviewing the records pertaining to the organization of a drainage district, is properly quashed where it appears that prior to the filing of such petition the district had hired an attorney and a surveyor, had had surveys made and estimates and specifications prepared governing the work to be done, had brought condemnation proceedings and had damages assessed, had entered into agreements for right-of-way, had levied a special assessment or a tax and issued orders for its collection, and had held an election and elected drainage commissioners.

5. DRAINAGE DISTRICT—*who cannot attack legal organization of.* Parties in interest who have voted at the election for drainage commissioners, made contracts with the drainage commissioners, waived claims for damages for right-of-way, and been candidates for drainage commissioners, cannot question the legal organization of the drainage district in question.

*Certiorari* proceeding. Appeal from the Circuit Court of Kankakee County; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

W. R. HUNTER and A. L. GRANGER, for appellants.

CHARLES B. CAMPBELL and A. E. SMITH, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

John Deslauries, Clafas Guimond and Delia Boudreau filed a petition in the court below for a common-law writ of *certiorari*, commanding Treffly Soucie, Robert Graham and Samuel Wilson, Drainage Commissioners of Union Dis-

trict No. 1, of the towns of Sumner and Manteno, in Kan-
kakee county, to certify into court a complete transcript of
all records and papers relating to the attempt to organize
said drainage district, in order that the court might inspect
said record and proceedings, and that, if found irregular,
the same might be set aside and declared void. A vacation
order was entered, directing the issue of the writ, and the
writ was issued and served. The defendants appeared and
entered their motion to quash the writ and dismiss the pe-
tition. Said motion is set out in the bill of exceptions, and
is based upon various acts that had· been performed after
the organization of the drainage district, and before the
filing of said petition, and in reliance upon the assumed
validity of the organization and the proceedings resulting
in said organization; defendants therein declaring that if
the said organization and proceedings should be quashed,
it would result in great public detriment and inconveni-
ence, and that no injustice had been done to the petition-
ers. This motion was heard upon proofs submitted, and
was granted, and the writ of *certiorari* was quashed and
the petition dismissed. This is an appeal by the petition-
ers from said judgment. The evidence heard on the mo-
tion, and an exception by petitioners to the action of the
court in sustaining said motion and rendering said judg-
ment, are preserved by a bill of exceptions.

It is contended by appellants that the court should not
have entertained the motion to quash the writ and dismiss
the petition, but should have required defendants to make
return to the writ, and that this court should treat the evi-
dence introduced by defendants as their return to the writ,
and that the court below should have quashed such record,
and that this court should now direct it so to do. The ap-
plication to the judge in vacation for an order awarding
the writ was *ex parte*. It often happens that in fact the
writ ought not to issue, either because the petition is not
sufficient on its face, or because of laches or other extrane-
ous matter which ought to prevent or estop petitioners
from having the writ. A common law writ of *certiorari*

Deslauries v. Soucie.

is not a matter of right, but of sound judicial discretion under all the circumstances of the case, as laid down in the authorities cited by us in Sampson v. Commissioners of Highways, 115 Ill. App. 443. It is in accordance with proper practice in such cases that the defendants should be permitted to make such a showing in support of a motion to quash the writ and dismiss the petition, before making return to the writ, for when the case is heard upon the return the record alone is considered. Drainage Commissioners v. Volke, 163 Ill. 243; Sampson v. Commissioners of Highways, *supra.* We cannot treat that as a return which the court below did not treat as a return, nor, indeed, is there anything in the testimony to show that the record evidence introduced by defendants comprises all the record which would have been embraced in a return to the writ.

The petition for the writ is based upon the supposed absence from the record of some things which it is claimed should have appeared therein in order to make a perfect record showing the organization of the district. The real ground of the motion to dismiss is that this petition came too late. The petition for the organization of the drainage district was filed June 20, 1903, and on that day the town clerk issued a notice for the first meeting of three highway commissioners as drainage commissioners to act upon said petition. It is argued here that that notice, as it appears in the record offered in evidence by defendants, was defective in not stating the time of meeting, there being a blank in that respect in the copy offered in evidence. But the petition for the writ of *certiorari* expressly averred that upon the filing of the petition for the organization of the drainage district, the town clerk selected two certain commissioners of highways from the town of Sumner and one from the town of Manteno to constitute the drainage commissioners for the proposed district, and notified them of their selection and of the time when they should meet at his office, and that they met on July 6, 1903, pursuant to said notice. Petitioners are bound by that averment. The proofs show that the commissioners met on July 6, 1903, at the time and place appointed, and had a hearing,

and found in favor of the petitioners, and adjourned to meet July 20, 1903, and that a public announcement was then and there made of said adjournment, and of the time and place where the adjourned meeting would be held. An adjourned meeting was held on July 20th, at the time and place specified, in which certain changes were made in the boundaries of the district, by taking out of the district certain lands and including certain other lands not mentioned in the original petition, among which were lands of Robert Graham and William Parker, to whom it is claimed the record does not show affirmatively the required notice. This supposed want of record proof of notice to Graham and William Parker, is the main ground upon which the legality of the organization of the district is assailed. The commissioners then adjourned to July 30th, at a specified time and place, and publicly announced the time and place to which they adjourned. On July 30th, the second adjourned meeting was held, and a full order was made organizing the district. At that time an engineer, who had previously been employed for that purpose, made a detailed report of a survey of the district, and an estimate of the cost of the proposed drainage, with specifications for the doing of the work. On August 25, 1903, the commissioners made contracts for the right-of-way for the proposed drainage district with various property owners; and made contracts for right-of-way with other property owners on September 29th and October 23d. On September 17th the commissioners began a proceeding against Robert Graham to condemn a right-of-way across his lands. Said cause went to trial on September 29th, and after it was partly completed, a settlement was effected, and he entered into a contract with the commissioners for a right-of-way across his lands. On said September 17th condemnation proceedings were also begun against Delia Boudreau and others, and a hearing of the case was had on September 29th, and the defendants, by their representative, stated that they did not ask for damages, and that was made a matter of record. On October 3d, proceedings were begun against Helen Ryan, to condemn a right-of-way across

her lands, and on October 20th that cause was tried, and her damages were awarded. On October 26th, the commissioners made a classification of the lands of the district, pursuant to statute, and gave notice that they would hear objections to the classification on November 17th. That notice was served upon each of the appellants, and was also published in the newspaper, and on November 17th there was a hearing, and certain objections were overruled, and the classification was confirmed. None of the present appellants objected to the classification. On said November 17th the commissioners made a special assessment against the highways of the district. On February 12, 1904, a special assessment was made against the lands in the district to raise the funds necessary to establish the drainage system. On March 2, 1904, the commissioners made an order for the collection of said special assessment or tax, and directed that it be paid within thirty days from that date. On March 12, 1904, an election was held, at which Deslauries and Robert Graham voted, and Graham was elected commissioner. Afterwards, and after the thirty days had expired within which it was ordered that the taxes or special assessments be paid, this petition for a writ of *certiorari* was filed. It, therefore, appears that not only had the district been organized, but that the commissioners had made contracts with many landowners for right-of-way, and entered into obligations to them therefor, including Guimond, one of the petitioners for the writ of *certiorari;* that condemnation proceedings had been begun against Boudreau, another petitioner for *certiorari*, and she had waived a claim for damages before the court; that the commissioners had hired a surveyor, who had made a survey of the work and an estimate of its cost, and had prepared specifications for the work; that the commissioners had employed an attorney, and begun various legal proceedings, which resulted in the award of damages; that the classification had been made and approved; that a special assessment or tax had been levied, and an order issued for its collection, and the same had been outstanding for more than a month before the petition for

a writ of *certiorari* was filed. We are of the opinion that after the district had hired an attorney and a surveyor ; had had surveys made and estimates and specifications prepared covering the work to be done ; had brought condemnation proceedings and had damages assessed ; had entered into agreements for right-of-way; had levied a special assessment or a tax, and issued orders for its collection; and had held an election and elected drainage commissioners, it had proceeded so far in the performance of the functions for which the district was organized that the court was warranted in refusing to permit the record to be reviewed by a writ of *certiorari*, but properly left the parties to their remedy by *quo warranto*, where the case could be tried, not alone upon the record, but also upon the actual facts, even if they did not appear of record. Our conclusion that judicial discretion was properly exercised in dismissing the petition is confirmed by the proof which shows that Deslauries, one of the petitioners for the writ of *certiorari*, voted at the election for drainage commissioners; that Guimond, another of said petitioners, entered into a contract with the drainage commissioners for a right-of-way across his lands, thereby recognizing it as a body corporate, organized and capable of contracting; that Delia Boudreau, the third petitioner, waived all claim for damages for a right-of-way for said district across her lands ; and that Graham, one of the two landowners as to whom it is argued the record does not show sufficient notice to give jurisdiction to include his lands, was a candidate for drainage commissioner, and was elected, and in that capacity is a defendant and resisting this suit. William Parker, the other landowner whose lack of notice is made the ground of this attack upon the record, has not complained, so far as appears. If the record does not show sufficient notice to him, yet upon a writ of *quo warranto* based upon that defect, the district would have a right to plead and prove actual notice to him in the manner provided by law, even if the fact of notice had not been properly made a matter of record by the district.

The judgment is therefore affirmed.

*Affirmed.*