DRAINAGE COMRS. OF UNION DRAINAGE DISTRICT *et al.*

*v.*

PAULUS VOLKE.

*Filed at Ottawa November 9, 1896.*

1. CERTIORARI—*limitations—time within which writ may issue.* Lapse of time alone, short of the limitation for prosecuting writs of error, will not bar the issuing of a common law writ of *certiorari.*

2. SAME—*when writ of certiorari is barred by the petitioner's laches.* To bar, by petitioner's *laches*, the issuing of a common law writ of *certiorari*, it must appear that after the record was made and before petition filed something was done upon such record's assumed validity, which, if the record were declared invalid, might result in great public detriment.

3. SAME—*what extrinsic evidence competent on motion to quash writ.* On hearing of motion to quash the common law writ of *certiorari*

and dismiss the petition, extrinsic evidence is competent to show that no injustice was done petitioner or that great public detriment might result from declaring the record invalid.

4. Same—*extrinsic evidence incompetent on hearing of return to writ.* The judgment to be entered upon return to a common law writ of *certiorari* affects the validity of the record alone, which must be determined solely from its face.

5. Drainage—*jury cannot set off benefits under Farm Drainage act— the Levee act distinguished.* The jury, under the Farm Drainage act, (Laws of 1885, p. 77,) must assess as damages to a land owner the value of land taken for the ditch, with consequential damages, if any, to remainder of tract, and they cannot set off benefits as under the Levee act, that being the province of the commissioners.

6. Same—*language of section 20 of Farm Drainage act construed.* The provision of section 20 of the Drainage act, (Laws of 1885, p. 84,) that the jury, in assessing damages, shall return "the amount of damages found, *if any,*" does not authorize the jury to allow an owner no damages at all where his land is actually taken.

*Drainage Comrs.* v. *Volke,* 59 Ill. App. 283, affirmed. ·

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

The following is the statement of the case made in the Appellate Court:

"On the 7th of June, 1894, appellee filed a petition for writ of *certiorari,* showing that on the 13th of March, 1893, the commissioners of Union Drainage District, a drainage district situated in Cook and Will counties, instituted proceedings before a justice of the peace to condemn a right of way for a ditch over appellee's land; that he was summoned as the owner of the land, and appeared; that a hearing was had before a jury, who found that appellee was entitled to no damages; that the commissioners thereafter entered upon the land and made excavations to the injury of the land, and that they threaten to make further excavations. The petition charges that no offer of settlement was made by the commissioners before instituting the proceedings before the justice of the peace;

that no description of the land appears in the record of the district, so as to give the district title to any specific part of the land, and that there is no sufficient record in the district to justify the taking of any part of the land. A writ of *certiorari* issued and was served upon the commissioners and the clerk of the commissioners.

"In support of a motion to quash the writ and dismiss the petition, appellants offered as evidence parol testimony showing that after the finding of the jury the commissioners entered upon the land and constructed a ditch across it five feet deep, twenty-two feet wide on top and sixteen feet at the bottom; that other ditches, consisting of a main drain five miles long and a branch drain of two miles, had been constructed at an expense of about $12,000. But the court refused to consider the testimony, and overruled the motion to quash the writ and dismiss the petition. The clerk of the drainage commissioners then made the following return:

"STATE OF ILLINOIS, } *ss.*
        *Will County.*

"Before David S. Stephen, justice of the peace.—In the matter of the application of drainage commissioners of Union District No. 1, in the town of Frankfort, in the county of Will, and town of Rich, in the county of Cook, for assessment of damages of Paulus Volke to land for drain.

"1893, March 13.—Statement of drainage commissioners filed for requesting jury to assess damages of Paulus Volke to his land by reason of constructing over same. Venire of empaneling jury. Returned served by constable, Wm. H. Logan, as follows: 'Personally served the within notice on the within named Paulus Volke by reading the same to him, this 16th day of March, 1893.'

"1893, March 20.—Parties appear. Venire returned and following jury empaneled: Mark W. Hunt, G. J. Lankenau, W. M. Leffler, Fred Stauffenberg, Fred Block and Pete Pfeifer. Jury sworn and court adjourned until four o'clock P. M., for the purpose of permitting the jury to view the land.

"1893, March 20, 4 P. M.—Case called upon hearing the allegations and proofs of the parties. The jury return their verdict that the defendant, Paulus Volke, is entitled to no

damages. It is therefore considered by the court that Paulus Volke sustains no damages by reason of said drain, therefore cannot recover damages of said drainage commissioners.

David S. Stephen,

*Justice of the Peace.*

"Indorsed.—'Filed in my office March 24, 1893.—H. F. Luehrs, Drainage Clerk.'

"In addition to above transcript of file, attention of the court is invited to the plans, profile, specifications and map of said drainage district.

"Respectfully submitted.

Fred Bruggeman,

"Filed Oct. 2, 1894.                By J. W. D'Arcy.

"October 2, 1894, defendants offered to make the same proofs and evidence as presented on the motion to quash the writ. The court ordered 'that the record and proceedings be quashed and held for naught,' to which order of the court the defendant excepted and prayed an appeal."

John W. D'Arcy, for appellants:

Whenever great public detriment or inconvenience might result from interfering with the proceedings of inferior tribunals the writ of *certiorari* should be denied. *Elmendorf* v. *Mayor,* 25 Wend. 693; *Trustees* v. *School Directors,* 88 Ill. 100; *Rutland* v. *County Comrs.* 20 Pick. 79; *In re Lantes,* 9 Mich. 324; *Chamberlain* v. *Barclay,* 13 N. J. 244; *Bell* v. *Overseers,* id. 131; *Dailey* v. *Bartholomew,* 1 Ashm. 135.

Extrinsic evidence to the record may very properly be received to show that no injustice has been done and that a *certiorari* ought not to be issued. *Hyslop* v. *Finch,* 99 Ill. 179.

In order that *certiorari* may be barred by *laches* it must appear that since the making of the record sought to be reviewed, and upon its assumed validity, something has been done so that great public detriment or inconvenience might result by declaring it invalid. *Trustees* v. *School Directors,* 88 Ill. 100.

A court of equity will only lend its aid to those who seek it in apt time, taking all things into consideration. *Dobbins* v. *Wilson*, 107 Ill. 17.

It is a sufficient reason to refuse or dismiss a *certiorari* that due diligence has not been shown, and it will generally be refused where great public inconvenience will result.    2 Wait's Actions and Defenses, 135, 138; *People* v. *Rochester*, 21 Barb. 656.

More especially in cases of public interest is a *certiorari* a matter of discretion, and after long delay it will not be granted.    (*State* v. *Hudson*, 5 Dutch. 115.)    Nor is the discretionary character of the writ taken away by a statutory provision as to time, which is only a limitation. *In re Lantes*, 9 Mich. 324; *Lees* v. *Drainage Comrs.* 24 Ill. App. 494; *Supervisors* v. *Magoon*, 109 Ill. 142.

If the intention of the legislature was that the owner should be compensated for space occupied by the drain, that intention should be manifest from the legislative act.    We submit that such was not the intention of the legislature, but that the question of damages, if any, (not compensation,) was left to the discretion of the jury. *Winkelmann* v. *Drainage District*, 24 Ill. App. 242.

Haley & O'Donnell, and O. McGovney, for appellee:

Mere lapse of time, alone, short of the limitation for prosecuting a writ of error, will not bar the issuing of a common law writ of *certiorari*.    *Hyslop* v. *Finch*, 99 Ill. 171; *Bates* v. *Gillett*, 132 id. 302.

The Levee act and the Farm Drainage act are two entirely separate codes of law applicable to the subject of drainage.    *Gauen* v. *Drainage District*, 131 Ill. 446.

The entry upon the land and the construction of the ditch under the Farm Drainage act, in pursuance of a judgment of condemnation, constitute, in law, a taking and appropriation of a perpetual easement in the defendant's land.    *Chronic* v. *Pugh*, 136 Ill. 539.

Under the Drainage law of 1876, providing for compensation for land taken for ditches, and for damages, such compensation and damages are required to be paid` and tendered to the land owner before the entry upon his land. *Elmore* v. *Drainage Comrs.* 135 Ill. 269.

Any statute prescribing a rule of damages narrower in its scope than the above is in conflict with the bill of rights. *Chaplin* v. *Highway Comrs.* 129 Ill. 661.

Per Curiam : After a careful consideration of this case we have arrived at the same conclusion as that reached by the Appellate Court, and have concluded to adopt the following opinion of that court delivered by Mr. Justice Harker :

"Appellants' first point of contention is, that the writ should have been quashed because of the lapse of time between the condemnation of the land and the suing out of the writ. Mere lapse of time, alone, short of the limitation for the prosecution of a writ of error, will not bar the issuing of a common law *certiorari.* (*Hyslop* v. *Finch,* 99 Ill. 171.) To be barred by the *laches* of the petitioner it must appear that since the making of the record sought to be reviewed, and upon its assumed validity, something has been done so that great public detriment or inconvenience might result from declaring it invalid. A good illustration of the rule when *laches* should bar is found in the case of *Trustees, etc.* v. *School Directors,* 88 Ill. 100. The petition for the writ is addressed to the discretion of the court, and so, when the petition is filed either in resistance of an order for the writ or upon a motion to dismiss the petition, extrinsic evidence may be heard, not for the purpose of contradicting or enlarging the record, but to show that no injustice has been done the petitioner or that great public detriment and inconvenience might result from quashing the proceedings.

"It is contended that the evidence offered by appellants, to the effect that after the condemnation proceed-

ings against appellee's land were had the commissioners spent some $12,000 in digging ditches, was sufficient to sustain their motion to quash the writ and dismiss the petition, and should have been considered by the court to that end. It should be observed that the writ in this case does not question the organization of the drainage district. The quashing of the proceeding whereby appellee's land was condemned would by no means result in the loss to the district of what had been expended by the commissioners in constructing ditches. There is nothing in the way of appellants' proceeding again to condemn, if they are unable to arrive at an agreement with appellee. We agree with the circuit court that the evidence offered by appellants on the motion to quash the writ and dismiss the petition was not sufficient. Clearly it could not be considered on the hearing of the return to the writ made by the drainage clerk. The judgment to be entered on the return to a common law writ of *certiorari* affects the validity of the record alone, and must determine from its face, solely, whether it is valid or invalid.

"To the contention of appellee that the proceedings should be quashed because the record is silent as to any attempt of the commissioners to procure the right of way by agreement with him before commencing the proceedings, it may be said that appellee would be in a better position to urge this point if his petition did not show that he appeared before the justice in answer to the summons, and entered upon the trial of the question of damages without objecting that no attempt to settle with him had been made.

"For the reason that the record shows that the jury allowed appellee no damages for the land taken for the ditch the circuit court properly rendered judgment quashing the proceedings. The proceedings were under the Farm Drainage act, and the language governing the conduct of the jury is: 'The jury shall hear the evidence offered in the case as to the value of the land proposed

to be taken and all damages consequent upon the construction of the proposed work, and may go upon the premises for the purpose of viewing them; and they shall return as their verdict the amount of damages found, if any, in favor of the owner or owners and against the commissioners.' We do not think the words 'if any' authorized the jury to return a verdict that appellee was entitled to no damage for the land actually taken for the ditch. They could have arrived at no such conclusion without considering benefits. But under the statute under which the proceedings were had the jury had no right to consider benefits. The provisions of this act must not be confused with those of the Levee act. Our Supreme Court has held that the Levee act and the Farm Drainage act are separate and independent codes of law applicable to the subject of drainage. A district organized under the Farm Drainage act is subject only to the provisions of that act, and those of the other act have no application to it. (*Gauen* v. *Drainage District*, 131 Ill. 446.) Acting under this act, a jury must in its verdict find as damages the value of the ground used for the ditch, and if the tract through which the ditch passes is otherwise damaged it must be included. The commissioners fix the classification of lands and assess the benefits."

It may be further observed in respect to the evidence offered to prove *laches* on the part of the petitioner, that it was not shown that the digging of the ditches and expenditure of the moneys therefor occurred before the filing of the petition for the writ. The petition was filed in June and the hearing had in September, and while the evidence showed that when the hearing was had the work had been done and the money expended, it was silent as to the time.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.