# In Re LITTLE TARKIO DRAINAGE DISTRICT NO. ONE v. JOHN D. RICHARDSON et al., Appellants.

### In Banc, July 15, 1911.

1. **DRAINAGE DISTRICT: Change of Venue: Appointing Commissioners, Etc.** Where a change of venue was granted before the incorporation of the drainage district on account of the prejudice of the judge, and another circuit judge was called in, who heard the objections and entered a decree organizing the district, the regular judge who was disqualified did not thereafter have jurisdiction to appoint commissioners to assess damages and benefits, nor to hear exceptions to their report filed by land-owners. The judge or circuit court having once lost jurisdiction by a change of venue, does not regain it.

2. ————: ————: ————: **Waiver.** But if no objection is made by the land-owners, after such change of venue has been granted, to the appointment of commissioners by the disqualified judge or to his authority to act, until after the commissioners' report is filed and evidence is heard upon exceptions thereto, then the land-owners will be held to have waived any objection to the court's jurisdiction.

3. ————: **Lands Taken: Jury Trial.** The taking of land for drainage ditches is an exercise of the power of eminent domain, and on the coming in of the commissioners' report showing certain lands have been taken for that purpose and that lands will be damaged by the construction of the ditches, the land-owner, upon the filing of written exceptions thereto, is entitled to a jury to determine the amount of such damages; and a denial of a jury trial in such case is error. Not so, however, with the benefits assessed. The judge has power, upon a hearing, to increase or decrease the assessments allowed.

4. ————: ————: ————: **Judgment Suspended as to Benefits.** Where a jury trial is demanded to assess damages for lands taken, and damages done to other lands not taken in consequence of the construction of the ditches, the judgment assessing the benefits should be suspended until the damages are ascertained by a jury trial; and then, if the benefits exceed the damages, the court should deduct the damages from the benefits; and if the damages exceed the benefits, judgment should be rendered for the excess.

237 Sup.—4

Tarkio Drainage District v. Richardson.

5. ———: Damages for Land Taken: Constitutional Statute. Sec. 5516, R. S. 1909, is not unconstitutional and void. Read alone it might be held to limit damages only to the value of the land taken for a drainage ditch. But read in connection with the other sections of the same article, as it must be, damages may be assessed in the same manner as for lands taken or damaged for railroad purposes in condemnation suits, and that means that the land-owner is entitled to damages, not only for the lands actually taken, but also for all damages that may result, from such improvement, to lands not taken. Besides, even if there were no such statutory provisions, section 21 of article 2 of the Constitution is self-enforcing, and it provides for all such damages.

6. ———: ———: Deducted from Benefits. Damages awarded the land-owner for land actually taken by the drainage district may be deducted from benefits assessed against the land of which that taken is a part. That course is authorized by the statute, and the statute is not in conflict with the Constitution in that respect.

7. ———: ———: ———: Payment in Money: Discrimination. The Constitution does not require the damages for the land taken to be actually paid in money. They may be used to decrease benefits, or if they exceed the benefits, the benefits assessed may be used to reduce the damages awarded. And that is no such discrimination against the land-owner whose land is actually taken, in favor of the land-owner whose land is not taken, as renders the statute invalid.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Ellison*, Judge.

REVERSED AND REMANDED.

*H. K. White* for appellants.

(1) The proceedings under review were a continuation of the proceedings instituted to establish the drainage corporation. In those proceedings Judge Ellison had granted a change of venue and had disqualified himself, consequently he remained disqualified. Coltrave v. Templeton, 106 Fed. 370; In re Williams, 123 Fed. 321; Tabell v. Griggs, 3 Page (N. Y.) 207. (2) The court should have granted a hearing before a jury. R. S. 1909, secs. 5513, 5518, 2364. (3) Under

the Constitution, the proceedings are invalid because by Sec. 5516, R. S. 1909, only the cash value of the land taken is to be allowed in reduction of benefits, without allowance for incidental damages. Constitution, sec. 21, art. 2; Mills on Eminent Domain, secs. 1, 87, 128, 216; Lewis on Eminent Domain, secs. 10, 240, 607, 608; 2 Dillon, Mun. Corp. sec. 453; St. Louis v. Franke, 78 Mo. 41; Moss v. Railroad, 85 Mo. 86; Stuart v. Palmer, 74 N. Y. 183; Bridge v. Bridge, 7 N. H. 56; Bradshaw v. Rogers, 20 Johnson 103; Gardner v. Newberg, 2 John Ch. 162; Thacher v. Bridge, 18 Pick. 501; Eastin v. Amoskeag Co., 44 N. H. 143; Railroad v. Railroad, 2 Gray 1; Schmidt v. Densmore, 42 Mo. 225; Hanbeck v. Franke, 78 Mo. 41; Cox v. Tipton, 18 Mo. App. 150; Lindell v. Railroad, 36 Mo. 543; Admr. v. Railroad, 38 Mo. 483; Railroad v. Weaver, 10 Kan. 344; Parker v. Railroad, 13 Lea, 669; Gutshow v. County, 105 N. W. 548; Hatch v. Reardon, 204 U. S. 160. (4) The statute is void for the further reason that it provides that the whole of the damage for land taken shall be deducted from the benefits as assessed instead of paying them in cash, and permitting the owner to pay benefits as levied afterwards as required of those whose lands are not taken. See cases under point 3. (5) The act is in violation of the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deny to anyone within its jurisdiction the equal protection of the laws. Railroad Co. v. Wright, 207 U. S. 127; Russell v. Croy, 164 Mo. 69; Railroad v. Reynolds, 183 U. S. 476; In re Van Horne, 70 Atl. 986; Board v. Johnson, 89 N. E. 594.

*Frank Petree* and *H. B. Williams* for respondent.

(1). The fact that Judge Ellison disqualified himself for having formed an opinion on the merits involved in the original proceedings for the incorporation of the drainage district, did not disqualify him

from sitting at the hearing of exceptions to the commissioners' report in assessing benefits and damages. The questions involved in the original action for incorporation were: Is the land a contiguous body of swamp and overflowed lands in this state, situated in one or more counties? Does the land embraced in the proposed district contain more than six hundred and forty acres? Are the articles of association signed by a majority in interest of the owners of the land included within the boundaries of the proposed district? Sec. 5496, R. S. 1909. Under the provisions of Sec. 5518, R. S. 1909, the judge of the court shall, in a summary way, hear and determine the questions contained in the commissioners' report. The questions involved in the commissioners' report relate to the amount of damages and benefits accruing to the lands and property in the drainage district in perfecting the plan for drainage adopted by the board of supervisors. In the proceeding for incorporation, the action was between the signing and non-signing landowners in the proposed district, and when the decree of incorporation was granted, a new person (a corporation) was brought into existence. Thereafter this new person adopted a plan for reclamation of the lands in the district, and filed its petition asking for appointment of commissioners to assess benefits to carry out its plan of reclamation, and the filing of exceptions to the commissioners' report commenced an action between this new person (the corporation) and the exceptors. The parties in the original action for incorporation and in the action on exceptions to the commissioners' report, were not the same. Neither were the questions involved in the original action for incorporation, and those involved in the exceptions to the commissioners' report, the same. Therefore Judge Ellison was not disqualified from sitting at the hearing of exceptions to the commissioners' report. When the decree of in-

corporation was granted and the landowners met as required by law and elected a board of supervisors, and said board organized, that was an end of the questions involved in the question of incorporating the drainage district. Nothing remained to be done to bring that corporation into existence. It was then a corporation, both *de facto* and *de jure*. (2) The court did not err in refusing to grant appellant a jury trial on the issues involved in the exceptions to the commissioners' report. The drainage district is not seeking to take exceptors' land in this action. Said district is not attempting, in this action, to exercise the power of eminent domain. It has only ascertained values as a basis of taxation for local improvements. A city takes property of a citizen for a public street under the power of eminent domain. It raises money to make compensation therefor upon property that is specially benefited by the improvement. There is no law, constitutional or statute, requiring the benefits to be ascertained by a jury. St. Louis v. Buss, 159 Mo. 12. Assessments for public improvements are regarded as a species of taxation, and property owners are not entitled to have the assessments for taxation by a jury. 24 Cyc. 133; Land Co. v. Miller, 170 Mo. 259; Heman v. Schulte, 166 Mo. 419; Nauman v. District, 113 Mo. App. 578.

WOODSON, J.—This is the second appeal of this case to this court. The opinion delivered when the case was formerly here is reported in the 227 Mo. 252, which is referred to as forming a part of the statement of this case.

The case was begun in the circuit court of Holt county, in 1908, by T. G. Quinby and others against the appellants and others, by which they sought to have a certain body of land situated in that county incorporated into a drainage district.

The appellants owned several hundred acres of land in that vicinity, a part of which was embraced within the boundaries of said district.

Appellants appealed from the award of the commissioners and filed a motion for a change of venue from Honorable Wm. C. Ellison, judge of that court, alleging prejudice on his part against them.

Subsequent to the filing of that motion, but prior to any action having been taken thereon, appellants also filed objections to the granting of a decree of incorporation as prayed.

A change of venue was granted and the Honorable F. H. Trimble, judge of the Seventh Circuit, was called in to try the cause.

A trial was had before the latter judge, which resulted in a decree incorporating the district. From that decree the appellants here were also the appellants in the former appeal.

After the incorporation of the district the parties interested duly elected a board of supervisors, as provided by law. In due time this board filed in the circuit court, of said county, a petition, asking the Honorable Wm. C. Ellison to appoint commissioners to assess damages and benefits, which would result to the property owners by reason of said improvements.

After Judge Ellison had appointed the commissioners to assess the damages and benefits aforesaid, the board of supervisors undertook to enlarge the district and instituted proceedings to that end, also in the circuit court of Holt county. Thereupon the appellants filed, as I understand the record, a second application for change of venue from Judge Ellison, because of his prejudice.

This application was granted and this branch of the cause was sent to the circuit court of Andrew county, which proceedings for the enlargement of the district were heard and determined in that court, before Honorable A. D. Burnes, judge thereof.

Certified copies of the proceedings had in the Andrew County Circuit Court were transferred and filed in the cause in the circuit court of Holt county.

On July 18, 1910, Judge Ellison, in vacation, appointed C. G. Bostwick, E. L. Gaffney and Joseph Kite commissioners to assess the damages and benefits for the original and the enlarged district.

The commissioners, after having qualified as by statute provided, viewed the premises, assessed the damages and benefits, and duly reported their action to the court.

We omit the formal parts of the report, as they are not questioned. The total cost of the improvements was, by the commissioners, estimated to be $53,882.

The following quotation is taken from the statement of the case made by counsel for the appellants, viz.:

"The report and exhibits showed that the proposed ditch would be one hundred to one hundred and twenty feet wide, would run in a general north and south direction, passing through appellants' land described as the north half of section twenty, township 62, range 39. This ditch would enter these lands on the north line thereof, west of the north and south line of the section and then pass southeasterly till it reached the north and south line, and then pass south along the line into other lands within the district; thence beyond the southern line of the district, and empty into Big Tarkio River, a mile or so south of the southern limits of the district.

"The report among other things, recited the following: 'We went upon and over all the lands in said drainage district and we were accompanied by the secretary of the board of supervisors and assistant engineers of said district, and we have examined same . . . and we have made a calculation of the amount of land necessary to be taken and condemned for a

right of way for the main drainage ditch, and for the laterals to be constructed over, upon and across each of said tracts of land. . . . We further report to the court that the following described tracts of land belonging to the parties respectively named, were found necessary to be taken and were taken and condemned for a right of way for main drainage ditch and laterals, aforesaid, to-wit:' The report then proceeded to set forth the course and width òf the ditch during its entire length. As to the appellants, the Richardson heirs, it described a strip of land fifty feet wide on each side of and measuring at right angles to center line of ditch, as shown on the plan for drainage of said district, beginning on the north line of said section 20, township 62, range 39, and extending to the center of said section 20, and passing south along the center line of said section 20, until it passes south òut of appellants' lands.

"The report showed that the appellants were named as owners of the north half of section 20, township 62, range 39, containing 320 acres, situated within the limits of Little Tarkio Drainage District, and the commissioners' report to this land found as follows:

"Total number of acres taken for right of way, 6.06.

"Total damages allowed, $242.40.

"Total amount of benefits assessed, $8,633.35.

"Amounts of benefits assessed, less damages allowed, $8,390.95."

Upòn filing this report, the clerk of the court duly notified the parties interested, of that fact, and in proper time appellants filed exceptions to the same.

The exceptions so filed, and here presented, are as follows (formal parts omitted):

"1. That this court has no power or authority to appoint commissioners to assess the damages to these exceptions, or the benefits against them.

"2. That no notice whatever was ever given in any manner whatever of these proceedings, although Thomas C. Dungan, W. H. Richards and———— Schultz were residents of Holt county at the time of the institution of these proceedings and owned lands within said drainage district, which said lands have been assessed with benefits by these commissioners.

"3. And these exceptors now say that the statute under which these proceedings were conducted is unconstitutional and void for the following reason, to-wit: It is provided by section 21 of article 2 of the Constitution of the State of Missouri, that private property shall not be taken or damaged for public use without just compensation.

"That article 3 of chapter 122, Revised Statutes 1899, as amended from time to time, now known as chapter 41 of the Revised Statutes for the year 1909, makes no provisions whatever for the ascertaining of damages to the lands of persons within the drainage district, but confines the authority of the commissioners to ascertaining the fair cash value of the lands necessary to be taken and used for the right of way and improvements.

"That the proposed improvements cut off about ten acres of land belonging to these exceptors in the northeast corner of the northwest quarter of said section twenty, township sixty-two of range thirty-nine, from the remainder of said quarter section, and thereby damaged said quarter section in the sum of one thousand dollars.

"That said proposed improvements separate the northeast quarter of said section twenty from the northwest quarter of said section, and such division of said half section causes damage to the land belonging to these exceptors in the sum of one thousand dollars, and no provision is made by which said damages or any part thereof can be ascertained.

"Wherefore, these exceptors say that these proceedings are wholly void and of no effect.

"That the said proposed ditch, in passing through the lands of these exceptors, passed through a part so located that the level water in said ditch at ordinary stages will be above said part of these exceptors' lands, and at hight stages of water, said level will be far above the level of the lands of these exceptors, so that it will be perpetually in danger of overflow of said waters upon the lands of these exceptors. And that no provision of the statute in this case referred to has been made for the ascertainment of the damages to said land not taken, by the reason of the construction of said ditch in the manner and form aforesaid.

"Exception 2. And these exceptors further show that these proceedings are void for the further reasons that said drainage district has never employed any engineer to devise a plan of drainage and to report a plan for improvements, and to make a topographical survey of the lands within the district, and that no such plan or topographical survey has been made by any officer of the drainage district; and that the data used by the supervisors of said drainage district were not furnished by any engineer by it appointed.

"Wherefore, these exceptors pray that this report may be set aside and for naught held, and these proceedings finally dismissed.

"4. That section 5516, Revised Statutes 1909, under which the commissioners appointed have proceeded, is null and void, because it is in contradiction of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall deny to any person within its jurisdiction the equal protection of the laws, in that said section attempts to provide that the damages to the citizens whose land within the district is taken for the purpose of the district shall be compelled to accept as satisfaction for such damages the benefits assessed to the full

amount of the damages assessed, which benefits are only a basis for future taxation, and may not be required of persons whose property within the district is benefited but is not taken, and which property by said section is to be taxed for a series of years upon the benefit assessment; and because it attempts to compel the owner of land within the district to accept as satisfaction for said damages such benefits so assessed, as above stated; while section 5513, Revised Statutes 1909, provides that persons owning land outside of the district, taken for the purpose of the district, shall be paid in cash.''

The exceptions were duly presented to the court and after hearing the evidence for and against the same, counsel for appellants asked five instructions, which are as follows:

''First. That the proceedings under consideration are . . . to the original proceedings, resulting in a decree of corporation, and that the regular judge of the court who was disqualified in said original proceedings is not competent to hear and pass on the regularity of the proceedings under consideration at this term.

''Second. That the exceptors should have been granted a trial by jury as demanded by them, and no decree can be entered in this cause at this time.

''Third. That the statute of the State of Missouri assuming to define the duties and powers of the commissioners is void, being in contravention of section 21 of article 2 of the Constitution of the State of Missouri, in that it assumes to limit damages to the value of land taken and no decree can be entered in these proceedings.

''Fourth. That the said statute is in contravention of said section 21 of article 2 of the Constitution of the State of Missouri, in that it assumes to direct that the damages assessed shall be deducted from the benefits assessed when such benefits are ascertained

only for the purpose of a basis of assessment for taxes to be levied from year to year thereafter as might be found necessary. by the board of supervisors of the district and no decree can be entered in these proceedings.

"Fifth.   That said statute of the State of Missouri is in contravention of the Fourteenth Amendment of the Constitution of the United States in that it denies to the owners of land within the district whose land was taken for the purpose of the corporation the equal protection of the law, in that it assumes to require the owner of said lands so taken to accept pay for the damages assessed on account of the value of the land taken, benefits assessed as a basis for taxation thereafter, while owners of land outside of the district which are taken for the purpose of the corporation are to be paid in cash, and that it assumes to require said owner of land within the district to accept or pay for the assessed value of their lands taken benefits to the full amount of such damages, while owners of land within the district whose lands are not taken or damaged are not required by said statute to pay only from year to year such taxes as may be levied by the board of supervisors upon such assessed benefits.   And on account thereof no decree can be entered in these proceedings."

Each and all of these instructions were by the court refused, and appellants duly excepted.

The exceptions to the report of the commissioners were overruled and the report modified and confirmed by the decree of the court.

The decree, in so far as is material to this appeal, is as follows:

"In the Matter of Little Tarkio Drainage District Number One.   Report of Commissioners Assessing Benefits and Damages, and Exceptions to the Same.

"Now on this Saturday, the 24th day of September, 1910, being the second day of the adjourned session of the regular August term, 1910, of this court, the above cause coming on for further hearing, come now the Chicago, Burlington and Quincy Railroad Company in person, and the board of supervisors of Little Tarkio Drainage District Number One, by H. B. Williams and Frank Petree, its attorneys, and come also the landowners within the said district, who have filed their exceptions to the report of the commissioners herein, to-wit: T. C. Dungan, W. H. Richards, John W. Nauman, Jacob Nauman, Laura S. Pebly, Joseph S. Nauman, J. H. Roads, Mathew D. Ramsey, Mary Rhodes, Martelia Strong, George W. Shultz, and the Chicago, Burlington and Quincy Railroad Company, in person and by their attorneys, and the court having heard the evidence in full and the arguments of counsel, and being sufficiently advised in the premises."

[The decree then recites the various acts of the officers of the drainage district, of which no complaint is here made. It names all the exceptors and proceeds as follows:]

"That no exceptions were filed to the said report by any owners of land or other property within the said district except those above named and hereinafter referred to; that in passing on the exceptions filed by the above named owners of land and the property within the district in the light of the testimony before the court, and in assessing the benefits, the court proceeds upon the following basis, namely: It will first ascertain from the evidence the present value of each tract of land to which exceptions are filed, without regard to the ditch. It will then find from the evidence the actual value of the land occupied by the ditch, and also the damage resulting to the tract from the condition in which the ditch leaves it, and will deduct these two items from the

actual present value of the land. This will represent what the owner has left, after the construction of the ditch to be benefited by it. An additional deduction will be made in some cases where the land slopes from the ditch and for that reason will require tiling or some similar work in order to get the surface drainage or benefits which land sloping towards the ditch gets without the necessity of tiling.

"As to the Richardson exceptors, to-wit, the owners of the north half of section 20, township 62, range 39, the court finds the present value per acre of the 320 acres to be $35. The court further finds, taking into consideration the matters and things mentioned in the beginning, that the east 160 acres will be benefited to the extent of $20 per acre, and that the west 160 acres, in like manner will be benefited to the extent of $22.50 per acre. The court further finds that by the construction of the ditch and laterals seven and one-half acres of said 320 acres will be appropriated and that the benefits shall be reduced by deducting seven and one-half acres from the 320 acres, leaving 312½ acres, in the following manner: first, deduct three acres appropriated from the west 160 acres, and four and one-half acres appropriated from the east 160 acres, then multiply what is left in each tract by the above benefits per acre, making in the aggregate $6,642.50, which represents the total benefits for the 320 acres. And the court finds that said 320-acre tract sustains no incidental damages whatever.

"As to the lands of exceptor T. C. Dungan, the court finds the present value of the forty-acre tract, to-wit, the northeast fourth of the southwest quarter of section 20, township 62, range 39, to be $40 an acre, and finds that the slope of the land is towards the ditch. The court further finds that one and one-half acres of said land, of the value of $40 an acre, will be taken and appropriated by the ditch leaving 38½ acres which the court finds from the evidence will be

benefited $22.50 an acre, or in the aggregate $866.25. And the court finds that said forty acres sustains no incidental injury or damage.

"As to the eighty acres of said exceptor Dun gan, to-wit, the south half of the southwest quarter of section 17, township 62, range 39, the court finds the present value of said eighty to be $40 per acre. The court further finds that 3.60 acres of said land will be appropriated for said ditch, leaving 76.40 acres. The court further finds that the market value of said eighty acres of land will be diminished and injuriously affected by, reason of the triangular shapes in which it is left by the ditch to the extent of $400. The court therefore deducts from the eighty acres 3.60 acres, leaving 76.40 acres, and assesses the benefits at $22.50 per acre for said 76.40 acres, less $400 incidental damages, as aforesaid, making the aggregate $1319 which represents the total benefits for the 80 acres."

The decree further finds specifically as to the other exceptors, and concludes as follows:

"It is therefore ordered, adjudged and decreed by the court that the report of the commissioners, filed in this proceeding, be and the same is hereby modified, altered and corrected in accordance with the foregoing findings and as so modified and corrected, the report of said commissioners is confirmed.

"It is further ordered and adjudged that the drainage district pay all costs incurred by them and half the court costs in this proceeding.

"And it is further ordered and adjudged that the balance or remaining costs shall be paid in equal parts by the objectors.

"All objectors who withdrew their objections are adjudged to pay their own costs."

To the entry of the decree and every part thereof, so far as it affected objectors, the Richardson heirs, and their said lands, the said John D. Richardson

and others at the time objected, and their objections being overruled, they excepted to the said ruling.

Thereupon appellants filed their motion for a new trial, which was by the court overruled, and exceptions thereto were duly saved.

They then duly appealed the case to this court.

I.   Complaint is first made by counsel for appellant of the action of Judge Ellison in appointing commissioners to assess damages and benefits against the lands embraced within the drainage district, by virtue of the improvements proposed, also of his action in hearing the exceptions filed to the report of the commissioners.

Their contention is that the assessment of damages and benefits, and the trial of the exceptions made thereto, are but a continuation to the original proceedings instituted in the circuit court of Holt county to incorporate the drainage district, and are therefore additional steps taken in the same cause of action, and not a new or independent proceeding.   That being true, they argue that Judge Ellison, having lost jurisdiction over the cause, by granting a change of venue, and calling in Judge Trimble to try the cause, he was therefore forever disqualified and barred from ever again acquiring jurisdiction over the same.

This contention of counsel for appellants is in our opinion well taken.   The principal underlying that question was presented to this court for determination in the case of State ex rel. v. Wilson, 216 Mo. 210, l. c. 280 to 286.   We there held that not only was the first assessment of benefits a part of the original proceedings to incorporate the district, but also that a subsequent, or second assessment was a continuation of the original proceedings to incorporate, and for that reason we held that the landowners were in court for all purposes, and were not even entitled to notice of the second assessment of benefits.

The latter case was cited with approval by this

court in Banc, in the case of State ex rel. McWilliams v. Bates et al., just decided and reported at 235 Mo. 262.

The conclusion announced in those cases is in perfect harmony with the statutes governing the organization of these districts, and the adjudications of this court regarding the change of venue in all civil cases of which this is one, as was expressly held in the case of State ex rel. v. Riley, 203 Mo. 175.

In the case of *Ex parte* Haley, 99 Mo. l. c. 152, this court, in speaking of this subject by Sherwood, J., said: "The transfer of the cause by change of venue took with it the whole cause, and every incident belonging thereto, to the Ralls Circuit Court, just the same as if the cause had originated in that court. Not a shred or patch of jurisdiction over the cause, or any of its incidents, was left in the Louisiana Court of Common Pleas. The jurisdiction of the Ralls Circuit Court was therefore complete over the petitioner. Having failed to obey the orders of the court, he became guilty of a manifest contempt by such disobedience. He was an officer of the court to which the cause was transferred. He was required to report his proceedings to that court, and 'to hold the moneys collected, and all property received by him, subject to the order of court.' [R. S. 1879, sec. 403.]"

It is provided in section 5497, Revised Statutes 1909, that the circuit court in which the proceedings are instituted, "shall thereafter maintain and have *original* (evidently exclusive) jurisdiction coextensive with the boundaries and limits of said district without regard to the county lines for all the purposes of this article."

Section 5499 provides that it shall be the duty of the circuit court organizing the district to "declare and decree said drainage district a public corporation of this State."

237 Sup.—5

This mandate of the statute has been followed in the cases of State ex rel. v. Wilson, supra, and Land & Stock Co. v. Miller, 170 Mo, 240.

Section 5506 provides that "within twenty days after the said district has been declared a corporation by the court, *the clerk thereof* shall transmit to the Secretary a certified copy of the record relating thereto."

This duty is imposed upon the clerk of the court organizing the district and not on the clerk of the court where the proceedings were instituted, thereby clearly indicating that a change of venue might be granted in such proceedings.

This same item is expressed in the succeeding section, where it is provided that "within thirty days after the circuit court shall have declared any drainage district organized, the clerk of such court (not the clerk of the court in which the proceedings were instituted, nor the clerk of the court from which the venue originally came, but the clerk of the court organizing the district) shall, upon fifteen days' notice, call a meeting of the owners of real estate," for the purpose of electing a board of supervisors to act for all the land owners.

Sections 5508 to 5513 prescribe the duties and create the powers of board of supervisors, and of the engineers mentioned in the articles.

Section 5514 provides that "within twenty days after the adoption by the board of supervisors of the aforesaid 'plan for drainage . . . the secretary of said board shall prepare and file a certified copy thereof' with the clerk of the circuit court having *jurisdiction of said drainage district, as aforesaid,* and at the same time the board of supervisors shall file with the said clerk of the circuit court a petition asking the judge of said court to appoint commissioners for viewing said lands."

Section 5515 provides that the clerk of said circuit court shall, upon the filing of said order of appointment (of said commissioners), notify the commissioners of their appointment and of their duty to meet at a place named by said clerk for the purpose of organizing themselves into a board of commissioners.

Section 5516 states the duties of the commissioners, and prescribes the rules by which they are to be governed in making the assessments, and then provides that the "report shall be signed by a majority of the commissioners and filed with the clerk of said circuit court organizing said drainage district."

Section 5517 provides that "upon the filing of the report of the commissioners the clerk of said circuit court shall give notice thereof."

Section 5518 provides for the filing of exceptions to the report of the commissioners. It also makes it the duty of the court in which the report is filed to hear the exceptions and to amend and modify the same as it may deem just and proper, and then render its decree accordingly. The clerk is then requested to make a certified copy of the commissioners' report, as amended and modified by the decree of the court, and transmit it to the secretary of the board of supervisors of the district.

Even in the absence of the adjudications previously mentioned, if any doubt existed, as to which court possessed the power to appoint the commissioners to assess the damages and benefits mentioned in this article, that doubt must certainly be removed by a perusal of these direct, positive and mandatory statutes, mentioning the courts wherein the various proceedings are to be had.

Under this article, the petition for, or the original proceeding, must be instituted in the circuit court of the county having the greatest acreage of overflowed lands embraced within the proposed district, but the

commissioners to be appointed to assess the damages and benefits mentioned therein, must be appointed by the court organizing the drainage district.

The same is true with reference to the report of the commissioners. It must be filed in the court organizing the district, and all exceptions made thereto must be heard and determined by that same court and none other.

The design and purpose of the Legislature as manifested by these direct, positive and mandatory statutes were to keep all the orders, proceedings and decrees relating to any drainage district in one county and one court. By this statute the court organizing the district is given the exclusive jurisdiction over the entire subject-matter of the proceedings, coextensive with the boundaries of the district "without regard to the county lines for all the purposes of this article."

We therefore hold that Judge Ellison had no jurisdiction to proceed further in the case, after sustaining the motion for a change of venue, and calling in Judge Trimble to try the same.

Counsel for respondent insist that, even though it be conceded that it was error for Judge Ellison to proceed with the cause after having granted a change of venue, nevertheless the objection to his authority to so act in the premises came too late, and the error was waived because the objection was not timely presented.

It appears from the record that, on the motion of the board of supervisors of the drainage district, the court, being presided over by Judge Ellison, appointed commissioners to assess the damages and benefits which the property owners would sustain in consequence of the proposed improvements. In pursuance to that appointment they proceeded to do that work, without objection from appellants, or from anyone else; and for the first time, after all their work had

been completed and their report filed with the court, and after the court had heard all the evidence offered in support of and against the exception filed to the report of the commissioners, counsel for appellants, by way of instruction, requested the court to declare that Judge Ellison had no authority to act in the case.

Our reports are full of cases holding that parties to actions may by their conduct in the circuit court waive their right to insist upon a change of venue granted or refused, and when so waived, this court will not interfere for the purpose of restoring to them their lost rights.

We therefore hold that appellants are in no position to complain of the action of Judge Ellison in appointing the commissioners, or in having the exceptions made to their report.

II. When the exceptions to the report of the commissioners were by the court taken up for hearing, counsel for appellants demanded a trial by a jury, and at the close of the evidence introduced in support of and against the exceptions, counsel made the same request by the second instruction asked.

The court denied the demand and refused the instruction, and to that action of the court, counsel duly saved their exceptions.

This action of the court constitutes the basis of the second proposition here presented for determination.

In order to correctly understand this proposition, it becomes necessary for us to consider sections 5513 and 5518, Revised Statutes 1909. In the first instance these sections give the commissioners plenary power to assess all damages and benefits which will result to the property owners in consequence of the proposed improvements, including reasonable compensation to the landowners, whose lands are taken for the right of way for the ditches and drains; and in the second

place, the circuit court is given full power to review
and pass, in a summary manner, as therein provided,
upon all assessments made by the commissioners, to
which timely exceptions have been filed.

These sections are dealing with two separate and
distinct subject-matters; namely, taxation and condem-
nation.

The commissioners under those sections of the
statute are empowered to assess not only the damages
and benefits which will result to landowners, in con-
sequence of the construction of the proposed improve-
ments, but also, as previously stated, to assess the
fair cash value of the land to be taken for the use of
the ditches and drains. But when the exceptions to
the report of the commissioners come on for hearing
before the circuit court, it must discriminate between
the two classes of assessments complained of. If the
assessment was made under the taxing power of the
State for benefits which will result to the property in
consequence of the improvement, then the circuit court
may try the exceptions without the aid of a jury "in
a summary manner;" but when the exceptions filed
challenge the assessment of the cash value of land
to be taken for the right of way for the ditches and
drains, or the damages that will be done thereto by
reason of the improvements, under the power of emi-
nent domain, then the court must grant a jury trial
when demanded by the landowners, for the reasons
to be presently stated.

The distinction between these two classes of as-
sessments has been recognized by this court in a num-
ber of cases. [Keith v. Bingham, 100 Mo. 300; St.
Louis v. Buss, 159 Mo. 9, l. c. 12; Gibson v. Owens,
115 Mo. l. c. 267; Heman v. Schulte, 166 Mo. 409, l. c.
419; City of Independence v. Gates, 110 Mo. l. c. 380;
Land & Stock Co. v. Miller, 170 Mo. 240, l. c. 259; City
of St. Joseph v. Farrell, 106 Mo. l. c. 442.]

Tarkio Drainage District v. Richardson.

In Keith v. Bingham, supra, Judge BARCLAY, on page 306, in speaking for the court, said: "It is claimed by defendant that the taxbills in suit were issued in violation of that section of the Constitution which declares 'that private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed.' Looking at this defense from the most favorable standpoint, it is evident that it is untenable. The section of the Constitution just quoted refers to, and is intended to regulate, the exercise of the right of eminent domain; whereas special assessments for local improvements, such as the taxbills before us, are referable to, and sustainable under the taxing power. This distinction is well recognized both here and elsewhere in the United States. [Garrett v. St. Louis (1857), 25 Mo. 505; Lewis on Eminent Domain, sec. 5.] If the taxing power has been called into play in the mode required by law for the purpose of paying for a local improvement, such as paving or grading a street, it is no defense to a bill issued therefor to say, as is said here, that the street, or the improvement, damaged and did not benefit the property, though, if such were the fact, the party injured might have his action (on a proper showing) under the Constitution for such injury."

And in the case of St. Louis v. Buss, supra, BRACE, P. J., in speaking for the court, said: "The contention of the appellants, in brief, is: that the court had no authority to thus modify the report of the commissioners, and in support of this contention, section 21, article 2, of the Constitution, is invoked, by which it is provided 'that private property shall not be taken or damaged for public use without just compen-

sation.  Such compensation shall be ascertained by a
jury or board of commissioners of not less than three
freeholders, in such manner as may be prescribed by
law,' and the cases of Bridge Co. v. Ring, 58 Mo. 491,
and Rochester Water Works v. Woods, 60 Barb. (N.
Y.) 137, are cited.  If the court had undertaken to
modify their report as to the damages assessed for the
property taken for the improvement, then this provi-
sion of the Constitution would have some application,
and the contention receive some support from the
cases cited.  But such was not the case.  The court did
not in any manner change or modify the report of
the commissioners as to the damages for the land
taken.  On the contrary, the modification was confined
to the assessment for benefits to defendant's lots not
taken or damaged by the improvement.  The city takes
the property of a citizen for a public street or high-
way under the power of eminent domain.  It raises
money to make compensation therefor under the power
of taxation, by levying a portion thereof upon prop-
erty that is specially benefited by the improvement.
While under the charter but one proceeding is pro-
vided for the accomplishment of both objects, yet
they are distinct in character, as are the powers from
which they flow.  So far as the proceeding goes, in the
exercise of the power of eminent domain, it is sub-
ject to the constitutional provision quoted.  But we
know of no constitutional provision requiring the ben-
efits to be 'ascertained' by 'a jury or board of com-
missioners.'  In that proceeding, however, the char-
ter of the city of St. Louis (article 6, sections 4, 5, 6
and 7) does provide that the board of commissioners
appointed for the purpose of condemning the prop-
erty required for the public use, shall also assess the
benefits, subject to the power of the court in which
the proceedings are had, to 'review' their assessment,
on which review, 'the court shall make such order
therein as right and justice may require, and may

order a new appraisement.' The power of the com-
missioners to assess the benefits, and the power of the
court to review the assessment, is derived from the
same source, i. e., the charter. In the exercise of that
power, the court is required to make such orders 'as
right and justice may require.' This requirement is
plenary and mandatory, imposes an absolute duty upon
the court, and if in the proper discharge of that duty,
it becomes necessary, the court 'may order a new ap-
praisement upon good cause shown.' This latter re-
quirement, unlike the former, is permissive, and im-
poses no absolute duty. Whether or not a new ap-
praisement shall be ordered in any given case, upon
cause shown, is left to the judicial discretion of the
court. In some cases, the exercise of a wise judicial
discretion may demand that the assessment of bene-
fits against all the property be confirmed; in some,
that the assessment against all the property be set
aside; in others, that the assessment against some of
the property be confirmed and against some be set
aside; and yet in others, that the assessment against
some of the property be confirmed, against some be set
aside, and against some be reduced as was done in
the case in hand. The authority of the court to ex-
ercise its discretion in the last mode is just as ample
as it is in the first three. And while in any case the
court upon good cause shown, has a like discretion to
order a new appraisement, in no case is it obligated
to do so either by the Constitution of the State, or the
charter of the city, unless justice and right require
it.''

The other case cited announced the same general
rule.

Our reasons for holding that the appellants were
entitled to a jury trial are as follows:

Section 21 of article 2 of the Constitution pro-
vides: ''That private property shall not be taken or
damaged for public use without just compensation.

Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law.''

In obedience to this constitutional mandate the Legislature enacted said sections 5513 and 5518, which, in so far as they are here material, read as follows:

Section 5513, after requiring the commissioners to file their report with the circuit clerk, proceeds, ''And thereafter the same shall be proceeded with [in the circuit court] in the same manner as is now provided for by law in article 2, chapter 22 of the Revised Statutes of Missouri, 1909, for the appropriation and valuation of lands taken for telegraph, telephone, gravel and plank and railroad purposes.'' And section 5518, after authorizing the landowners to file exceptions to the report of the commissioners, further provides: ''All exceptions shall be heard by the court and determined in a summary manner so as to carry out liberally the purposes and needs of such drainage district. . . . and shall condemn any land and property that may be needed for a right of way or material, following as nearly as possible the procedure in cases of condemnation of rights of way of railroads.''

Section 4 of article 12 of the Constitution and section 2364, Revised Statutes 1909, provide in express terms, that when a railroad company condemns lands for a right of way, or where its property is being condemned, either party to the proceeding is entitled to a trial by a jury.

Article 2 of chapter 22, referred to in section 5513, relates to condemnation proceedings of rights of way for railroads and other companies, which includes section 2364.

So under these constitutional and statutory provisions, there can be no doubt but what the appellants were entitled to have the value of their lands taken

or damaged for the use of the district, to be assessed by a jury.

Counsel for respondent do not seem to controvert the correctness of the conclusions just stated, but insist that they have no application to the facts of their case, for the reason, that the district is not seeking to take appellants' land in this trial.

We do not so understand the record. The decree as hereinbefore set out shows that the district proposes to take seven and one-half acres of the Richardson tract and five and ten one-hundredths of an acre of the Dugan tracts, which will be "occupied by the ditch." Not only this, but the decree also shows that in assessing the benefits which would be done to these tracts, the court took into consideration the said seven and one-half acres and the five and ten one-hundredths of an acre, in reducing the benefits assessed against those tracts. Those portions of the decree are inconsistent with the idea that the district was not seeking, by this proceeding, to take any of appellants' lands.

The court not only appropriated the seven and one-half acres, and the five and ten one-hundredths of an acre, before mentioned, but as before stated, the amount of the benefits assessed against the remainder of the Richardson and Dugan tracts was reduced by the value of the two tracts so taken for the right of way for the ditches.

We are, therefore, of the opinion, that the circuit court erred in refusing appellants' request for a trial by jury, regarding the value of the lands proposed to be taken by the district for the right of way for its ditches and drains, and for the assessment of damages done to the remaining portions by reason of said improvements.

The judgment assessing the benefits should be suspended until the value of the land taken for the ditch, and the damages done to the remainder, in con-

sequence therof, is ascertained in the manner before suggested.

If the benefits exceed the damages, then the court should deduct the latter from the former; but if the damages should exceed the benefits, then the former should be deducted from the latter, and the judgment should be rendered accordingly. All this should be done in one proceeding.

III. By the third instruction asked, counsel for appellants challenge the constitutionality of the drainage statutes under which this proceeding was instituted and prosecuted. That instruction is as follows:

"Third. That the statute of the State of Missouri assuming to define the duties and powers of the commissioners is void, being in contradiction of section 21 of article 2 of the Constitution of the State of Missouri, in that it assumes to limit damages to the value of land taken and no decree can be entered in these proceedings."

This instruction is predicated alone upon section 5516, Revised Statutes 1909, and ignores all other sections of the statute bearing upon the same subject. That section should be read and construed with the other section of the same article, bearing upon the same subject; and by so doing, the objection made to the constitutionality of the act will be eliminated for the reason that section 5513, Revised Statutes 1909, among other things provides: "The court, or judge in vacation, shall appoint such commissioners, who, after having sworn faithfully and impartially to perform the duties devolving upon them, shall within thirty days after their appointment, unless longer time be given them, view the premises and assess the damages to each owner separately, taking into consideration the advantages and disadvantages of the proposed work and improvements, and make their report in writing, and file the same in the office of the

said circuit clerk, and thereafter the same shall be proceeded with in the same manner as is now provided for by law in article 2, chapter 22 of the Revised Statutes of Missouri 1909, for the appropriation and valuation of lands taken for telegraph, telephone, gravel and plank and railroad purposes.''

The article mentioned refers to statutes which provide the machinery, by which the damages the land-owners will suffer in consequence of the improvement, may be assessed. Section 2367 thereof reads as follows: ''In case property is to be, will be, or has been by any corporation damaged for public use, any person interested may have such damages ascertained. The proceedings for ascertaining and paying such damages shall be the same as are and may be provided by law for assessing damages which owners of land may sustain in consequence of its appropriation for railroad purposes.''

And section 2364 of article 2 of chapter 22, referred to in the last section, authorizing railroads to condemn lands, was mentioned and considered in paragraph two of this opinion.

This article fully provides for the condemnation of lands for the use of ''any road, railroad, telegraph, telephone or other corporation created under the laws of this State, for public use.''

It clearly appears from these statutes that ample provision is not only made for the assessment of the value of the lands taken for the use of drainage districts, but also for the assessment of all damages which may result thereto by reason of such improvements. That being true, the court was justified on that ground alone in refusing to give said third instruction.

But there is another valid reason which also warranted the action of the court in refusing said instruction, and that is this: That provision of the Constitution which prohibits private property from being taken or damaged for public use without just compensa-

tion first being paid, is self-enforcing, and needed no statute to authorize the commissioners or the court in allowing reasonable compensation for the land taken and damaged by reason of said improvements. [Householder v. Kansas City, 83 Mo. 488; State ex rel. v. Taylor, 224 Mo. l. c. 482.] That being true, then it is wholly immaterial whether there was a statute authorizing the assessment of such damages or not, for the obvious reason that the constitutional provision mentioned not only authorizes, but in express terms commands, that all such damages must be assessed.

In the last case cited, the same contention was made that is here presented. It was there contended that the statute, then under consideration, was void because no provision was made for the payment of damages, sustained by the landowners, for having been deprived of a living stream of water which flowed by or passed over his land, by reason of the construction of the ditch. In passing upon that question, the court on page 481, said:

"We do not concur with the contention of learned counsel in that the law nowhere provides for the payment of compensation for whatever damages a landowner may sustain for being deprived of a stream of water which flows by or passes over his lands by reason of the construction of the drainage ditch.

"Section 20 of article 2 of the Constitution expressly authorizes the taking of private property 'for drains and ditches across the lands of others for agricultural and sanitary purposes, in such manner as may be prescribed by law,' and section 21 of the same article provides 'that private property shall not be taken or damaged for public use without just compensation,' etc.

"In pursuance to that constitutional mandate, the Legislature duly enacted the drainage laws we now have under consideration. And whenever private property is about to be taken or damaged in conse-

quence of said improvements, then in steps said section 21 and says all damages done private property by means thereof shall be first paid.

"So under those organic provisions, when it becomes necessary for a drainage district to take or damage private property (whether it be water or land) for the purposes of its organization, it must first pay for the property to be so taken and the damage which will be done thereto in consequence thereof. If the value of the property to be taken and the damages which will be sustained cannot be agreed upon then compensation should be allowed for the same in the condemnation proceedings authorized by the acts of 1899 and 1905.

"And independent of that, this court at an early day held that said section 21 was self-enforcing and requires no legislation to give it force and effect; and that where a statute or the organic law creates a right, but is silent as to the remedy, the party entitled to the right may resort to any common law action which would afford him adequate and appropriate means of redress. [Householder v. City of Kansas, 83 Mo. 488.] Under that ruling injunction would have afforded relators and all other interested parties perfect protection against all such damages mentioned by counsel for relators. The point is therefore ruled against relators."

We therefore hold that the trial court properly refused said third instruction.

IV. The fourth instruction asked by counsel for appellants assails the constitutionality of said section 5516, for the reason that it provides, among other things, that the compensation awarded to the landowner for land appropriated for the right of way, for the ditch, and the damages allowed him for damage done to the remainder in consequence of the improvement, shall be deducted from the benefits assessed

against the land when such benefits are in fact but the basis of assessments for taxes to be levied from year to year, as might thereafter be found necessary by the board of supervisors of the district for the purpose of paying for the improvements made.

This mode of compensating the landowners for the land taken and the damages done thereto, it is contended, violates section 21 of article 2 of the Constitution of 1875.

There can be no doubt but what, under the section of the Constitution, it is permissible for the State, or any public corporation authorized by it, in the exercise of its taxing power, to assess against property, situate therein, special benefits accruing to it from public improvements, and such benefits may be considered in fixing the compensation to which one is entitled whose property has been taken or damaged for such improvements. [Newby v. Platte Co., 25 Mo. 258; Daugherty v. Brown, 92 Mo. 26; Lingo v. Burford, 112 Mo. 149; Wolters v. City of St. Louis, 132 Mo. 1; Bennett v. Woody, 137 Mo. 377; City of St. Joseph v. Geiwitz, 148 Mo. 210; City of St. Louis v. Buss, 159 Mo. 9.]

We are therefore of the opinion that the court did not err in refusing this instruction for the reason assigned by counsel.

V.    Counsel for appellants also contend that said section 5516 is unconstitutional, null and void, for the reason that it violates section 1 of the 14th Amendment of the Constitution of the United States, which forbids a State from enforcing any law which denies to any person within its jurisdiction the equal protection of the laws.

Counsel states his position in the following language:

"It is also void because of its inequality in that it attempts to compel the owner of the property to take in pay for his property taken, the full amount of

benefits assessed, when the benefits assessed are merely a basis for taxation therefor, so that the party whose property is taken under this law is to be paid immediately in benefits for the value of his property, while another landowner, who is not damaged, has twenty years in which to pay for such part of the benefit assessment as may be levied.

"It will be seen that it is not intended by the statute after benefits have been assessed to proceed to collect them immediately.

"By sections 5519 and 5520 provision is made for the use of this assessment of benefits as a basis of taxation. Taxes are to be levied and made payable in twenty annual installments. If the statute is followed the person whose land is taken pays at once by loss of land the value, while his neighbor whose land is not taken pays in installments and may not have to pay all his benefits.

"For example, A owns land through which a right of way is taken, taking say ten acres with improvements, valued at one thousand dollars. Benefits to the amount of two thousand dollars are found and assessed to the remainder of the tract. These benefits are reduced one thousand dollars on account of the land taken, leaving one thousand.dollars as a basis for future assessments. A's neighbor B is assessed two thousand dollars with no deduction because no land is taken.

"The board of supervisors find that all the benefits must be collected, and levies an assessment for the first year of five per cent.

"A, whose land is taken, at the end of first year has paid one thousand dollars by losing his land and fifty dollars, first annual installment. B, at the end of one year has paid one hundred dollars, first annual installment. At the end of second year A has paid eleven hundred dollars and B only two hundred dol-

lars. This makes an unjust and illegal distinction.''

In support of that proposition, we are cited to the case of Gutschow v. Washington County, 105 N. W. (Neb.) 548.

In that case the drainage district appropriated 3.5 acres of the plaintiff's land of the value of $140, and the commissioners appraised the damages done to the remainder of the tract at $100, and assessed the special benefits at $1,124.20. From that proceeding, the plaintiff appealed to the district court, where a trial was had, and the court, over plaintiff's objection, gave the following instruction:

''When you have ascertained the total damage, if any you find, suffered by appellant to the portion of his land not taken, you must deduct therefrom any special benefits which you find said land may have derived from the location and construction of said ditch. In determining the special benefits accruing to land by reason of the construction of the ditch, it is proper for you to take into consideration whatever will come to the land from the drain or ditch, making it more valuable for tillage or more desirable as a place of residence, or more valuable in the general market, the true and final test being what will be the influence of the proposed improvement on the market value of the property; but you are in no event to take into consideration the general benefits which the appellant may derive from the location and construction of said ·ditch, and a general benefit is one which is enjoyed not by the appellant alone, but by the property owners along the line of said proposed ditch.''

In passing upon that instruction, the court used the following language:

''The plaintiff contends that a different rule should obtain in a case where the landowner himself is compelled to bear the burden of the special benefits which his land sustains from the improvement. A spe-

cial tax of $1,124.20 has been levied and assessed upon the lands of the plaintiff to pay for the construction of this improvement. This assessment represents the value of the special benefits which will accrue to the real estate through which the ditch passes by reason of its construction, and he is compelled to pay that amount to reimburse the county for the money expended in the construction of the ditch. In the case of a highway being opened across his premises or of a railway being constructed thereon, the landowners may in a sense be said to pay the value of the special benefits which he derives by reason thereof, by such value being deducted from whatever damages the land not actually taken for the improvement may suffer by reason of the same. In the case of a drainage ditch, however, these benefits are assessed against him by the very act of the public authorities which appropriate his land to the public use. To allow these benefits to be deducted from any damages which he may suffer to the land not taken would be to compel him to pay twice to the public the value of the special benefits which he has received. This would manifestly be unjust and inequitable and would impose a burden upon him in excess of that borne by those whose lands were not damaged. To illustrate, suppose two adjoining proprietors were each assessed $1000 for special benefits accruing to the lands by reason of the proposed improvement. If the land of one were not damaged in any way by the proposed improvement, this amount would be the extent of the burden imposed upon him; but, if the land of the other proprietor were so traversed by the line of the ditch that the value of the remainder of the tract was depreciated $2000 by the construction of the ditch, if he were then compelled to offset against the damage $1000 in special benefits received by reducing his compensation to that extent, his burden would be double that of his neighbor, since he would be mulcted $2000 for the same

improvement for which his neighbor pays but $1000. In the case of a railroad or a highway the value of the special benefits accruing to the land is not assessed against and paid by the landowners, and hence the same should be deducted from his incidental damages, but with a drainage ditch the conditions are different, and the rule laid down by the district court would compel a double burden to be placed upon the landowners whose premises were damaged. Where special benefits have already been assessed against the owner of lands damaged by a proposed drainage ditch, the value of such special benefits should not be deducted from any damages accruing to the land not actually taken for the construction of the proposed improvement. [Livingston v. Mayor of New York, 8 Wend. 85, 22 Am. Dec. 622; Union Drainage Dist. v. Volke, 163 Ill. 243, 45 N. E. 415; Thomas v. Co. Comrs., 5 Ohio N. P. 449.] The apportionment of the cost of the ditch to each landowner is an exercise of the power to tax, but the taking of his property and the ascertainment of the damages he may suffer thereby is an exercise of the power of eminent domain. The statute makes no provision for the deduction of damages from the amount assessed against the land as special benefits, but the method provided is that the county authorities shall establish the apportionment according to the benefits first, and afterwards examine claims for damages and allow compensation therefor. No method is provided for offsetting one against the other.''

We are unable to understand the reasoning of that case, or to see wherein the inequality mentioned therein exists. Surely the case must be improperly reported, for obviously the very illustration given, by the learned commissioner who wrote the opinion, shows conclusively that the injustice or inequality mentioned by him did not exist in that case. But be that

as it may, it has no application to the facts of this case.

The only inequality here complained of is that the landowner under this statute, whose lands are taken or damaged for the use of the district, is com-pelled to pay at least a part of the benefits assessed against his lands, before the landowner whose lands are not taken or damages is required to pay his assess-ment of benefits.

This contention is unsound.   The landowner whose lands are taken or damaged for the use of the improvements is not, under this statute, paying his assessment in advance, either in law or fact, but un-der the requirements thereof, and in pursuance to the mandate of the Constitution, he receives just compen-sation for the land taken and damaged thereby, by the commissioners deducting the value thereof from the total benefits assessed against his other lands and the remaining benefits assessed, if any, he must pay, just as all other landowners in the district must pay their assessments.   [Newby v. Platt County, supra; Daugherty v. Brown, supra; Lingo v. Burford, supra; Wolters v. City of St. Louis, supra.]

There is no merit in this contention.

There are other questions, of a minor character, discussed in the brief filed in this case, but they will not be considered here, as it is not necessary to do so in order to properly dispose of the case.

For the error suggested, the judgment of the cir-cuit court is reversed, and the cause remanded for a new trial.

All concur, except *Kennish, J.,* who dissents, and *Graves, J.,* who expresses no opinion.