Jane **HEINTZ**, Personal Representative of the Estate of John G. Bock, Deceased, Appellant,

v.

Gene F. **HUDKINS** and Janet Hudkins, Respondents.

No. 17611.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 29, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 20, 1992.

Application to Transfer Denied March 24, 1992.

Cynthia N. Dunbar, Noland and Associates, P.C., Camdenton, for appellant.

William Icenogle, Icenogle & Icenogle, Camdenton, for respondents.

CROW, Judge.

A joint tenant of real estate sought partition of it. The trial court entered "Judgment" ordering the property sold and specifying how the net proceeds should be divided. The suing party died before the sale could be held. The trial court ruled the death rendered the suit moot, and dismissed it. That ruling is the subject of this appeal. The pertinent facts follow.[1]

By his second amended petition, John G. Bock ("Bock") averred he and Defendants Gene F. Hudkins ("Gene") and Janet Hud-

---

1. Many of the facts appear in an earlier opinion in this litigation, *Bock by Heintz v. Hudkins*, 807 S.W.2d 124 (Mo.App.1991).

kins ("Janet") were "seized as joint tenants" of a tract of land. Bock pled his share was one-half and the Defendants' "interests" were one-half. Bock prayed for partition according to the parties' respective interests.

In their answer, Defendants averred Bock and Gene were joint tenants of the tract, and Janet had no interest in it except as Gene's wife. Defendants pled Bock was entitled to half the tract and Gene was entitled to half.

On March 24, 1988, the parties appeared in the trial court by their respective lawyers and announced that based on the pleadings, no dispute existed regarding partition and sale. In a docket entry that date, the trial court found the tract should be partitioned and ordered it sold, the net proceeds to be divided half to Bock and half to Defendants. Bock's lawyer was ordered to prepare a "judgment entry" and to assist the commissioner in conducting a public sale.

The next activity of record occurred December 27, 1989, when the trial court filed a formal judgment consistent with the docket entry 21 months earlier.

Bock died December 31, 1989.

Four days later, Defendants filed a motion to dismiss Bock's second amended petition, averring (correctly) that no partition sale had been held. The motion asserted that on the date of Bock's death, he and Gene owned the tract as joint tenants with right of survivorship and not as tenants in common. Consequently, reasoned the motion, Gene had become owner of the entire interest in the tract and there were no grounds for partition, making the suit moot.

On February 8, 1990, the lawyer who was representing Bock when he died filed a document designated "Suggestion of Death and Motion for Leave to File Substitute Party." It averred Bock's will had been filed for probate and Jane Heintz had been appointed Personal Representative of Bock's estate.

On February 13, 1990, the trial court took up Defendants' motion to dismiss. Counsel were granted time to file suggestions. The trial court's docket entry included this: "Motion to substitute passed."

On March 5, 1990, the trial court granted Defendants' motion to dismiss. An appeal from that order was attempted. We found the order void and dismissed the appeal.[2]

Thereafter, Defendants filed another motion to dismiss the suit, virtually identical to their earlier motion.

On April 26, 1991, the trial court entered an order substituting Jane Heintz, Personal Representative of the Estate of John G. Bock, Deceased, as plaintiff in this action.

On May 7, 1991, Ms. Heintz ("Plaintiff") appeared in the trial court by counsel. Defendants appeared by their counsel. The trial court entered an order stating, in pertinent part:

Court holds that in a partition suit, final judgment is not had until the sale is approved. Therefore, since the sale had not been had nor deeds signed on 12/31/89 when John Bock died, Bock still owned ½ interest in joint tenancy w/ Deft at the time of his death. On Bock's death, Deft became vested w/ full ownership to the property. The partition is now moot. Motion to dismiss sustained.

Plaintiff appeals. Her brief presents five points relied on, the first of which reads:

The trial court erred in dismissing the judgment ... partitioning the interests of the parties in the real property, because the judgment was a judgment in rem and, therefore, the death of [Bock] did not avoid the judgment.

In support of the point, Plaintiff cites the following passage from 47 Am.Jur.2d *Judgments* § 1062 (1969):

... the death of a party does not avoid a judgment in rem, whether the death occurs after the rendition of the judgment or before final judgment.

As authority for that proposition, Am. Jur.2d relies on two cases: *Penhallow v. Doane's Administrators*, 3 U.S. (3 Dall.)

2. Footnote 1, *supra.* 807 S.W.2d at 126[1].

54, 1 L.Ed. 507 (1795), and *McCormick v. Paddock*, 20 Neb. 486, 30 N.W. 602 (1886).

*McCormick* arose from a partition suit in Nebraska by one Smith. The owner of the other undivided interest in the land, one Harrington, was insane and confined in an asylum in New York. Harrington was served by publication. Harrington died prior to entry of the decree. The case proceeded to conclusion, the land was sold, and the court confirmed the sale. Later, in a quiet title action, the validity of the partition sale was challenged. The Supreme Court of Nebraska held that if jurisdiction was obtained by publication, the subsequent death of Harrington would not render the further proceedings void. 30 N.W. at 603–04. There was no contention that by reason of Harrington's death, Smith became owner of the entire interest by survivorship. Consequently, *McCormick* does not address the issue presented by the instant case.

*Penhallow* was an admiralty case involving prizes captured by privateers. 3 U.S. (3 Dall) at 81–82, 1 L.Ed. at 518–19. Evidently, a party died while an appeal was pending. *Id.* 3 U.S. (3 Dall) at 85–86, 1 L.Ed. at 520. The opinion states:

> ... admitting the death of Doane, and that it can be taken notice of in this court, it is unavailing, because the proceedings in a court of admiralty are *in rem*. The sentence of a court of admiralty, or of appeal in questions of prize, binds all the world, as to everything contained in it, because all the world are parties to it.

Plaintiff reminds us the Supreme Court of Missouri has held a partition suit is a proceeding in rem. *State ex rel. State Park Board v. Tate*, 365 Mo. 1213, 295 S.W.2d 167, 168[3] (banc 1956). The same court has also held a judgment in rem is binding as to the res on the whole world. *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d 86, 101[31] (banc 1944).

Plaintiff's theory, as we understand it, is that a "judgment" was entered March 24, 1988, determining Bock owned a half interest in the subject tract and Defendants owned the other half interest. Parentheti-

cally, we note this "judgment" was a docket entry, another part of which stated Bock's lawyer was to *prepare* a "judgment entry." It is thus arguable the docket entry of March 24, 1988, did not constitute a judgment. See *Munn v. Garrett*, 666 S.W.2d 37, 39 (Mo.App.1984).

However, assuming arguendo that the docket entry of March 24, 1988, was a judgment, Plaintiff's reasoning—as we divine it—is that because Missouri considers a partition suit a proceeding in rem, the "judgment" of March 24, 1988, was binding on the world as of that date. Plaintiff argues a judgment in rem "runs with the land," hence Bock's death after the "judgment" was entered did not invalidate it. Consequently, says Plaintiff, the trial court should have gone ahead with the partition sale and divided the proceeds pursuant to the "judgment."

■ The decisive issue, of course, is whether the "judgment" of March 24, 1988 (or the formal judgment filed December 27, 1989), was an act that destroyed the joint tenancy. Joint tenancy is based on the theory that the tenants own one undivided estate together, the distinctive characteristic being the right of survivorship. *In re Gerling's Estate*, 303 S.W.2d 915, 917 (Mo. 1957). Upon the death of any one joint tenant, the surviving tenants own the entire undivided estate together, and so on to the last surviving tenant, who becomes sole owner. *Id.* A joint tenancy can be destroyed by partition by one or more of the joint tenants during the lifetimes of the cotenants. *Remax of Blue Springs v. Vajda & Co., Inc.*, 708 S.W.2d 804, 806[2] (Mo.App.1986); *In re Estate of King*, 572 S.W.2d 200, 211 (Mo.App.1978).

Our task is to decide whether the instant case had progressed far enough to destroy the joint tenancy. While no Missouri case answers that question, there is helpful authority elsewhere.

*Cobb v. Gilmer*, 365 F.2d 931, 933 (D.C.Cir.1966), states the universal rule in the United States is that a pending suit for partition of a joint tenancy does not survive the death of one of the tenants. This rule

is based on two related concepts: First, the theory of survivorship—that at the moment of death, ownership vests exclusively in the surviving joint tenant or tenants, and second, the doctrine that severance of the joint tenancy does not occur until the partition suit reaches final judgment. *Id.* The opinion emphasizes that if the power to demand partition survived the death of a joint tenant, his representatives could always sue for partition, thereby destroying the element of survivorship which is the essence of joint tenancy. *Id.*

*Stiff v. Stiff,* 184 Neb. 432, 168 N.W.2d 273 (1969), holds the filing of a partition suit does not destroy a joint tenancy, only the judgment or decree has that effect, and where there are two joint tenants and one dies while a partition suit is pending, nothing is left to partition. *Id.* 168 N.W.2d at 274–75. *See also: Minnehan v. Minnehan,* 336 Mass. 668, 147 N.E.2d 533, 535[4] (1958), mere institution of partition suit by joint tenant does not sever tenancy; *Dando v. Dando,* 37 Cal.App.2d 371, 99 P.2d 561, 562 (1940), filing of partition suit by one of two joint tenants does not sever tenancy, and upon death of the suing tenant nothing remains to partition.

■ We find the above authorities persuasive, and hold the filing of Bock's second amended petition for partition did not destroy the joint tenancy. Whether the joint tenancy was destroyed by the "judgment" (docket entry) of March 24, 1988, or the formal judgment filed December 27, 1989, is a harder question.

It is arguable that once the trial court determined the tract should be sold and the net proceeds divided half to Bock and half to Defendants, Bock and Gene no longer owned the entire undivided tract together, but instead each separately owned an undivided half, thereby destroying the joint tenancy. However, as we shall see, neither the "judgment" of March 24, 1988, nor the formal judgment filed December 27, 1989, constituted a final determination of the parties' respective interests.

Section 512.020, RSMo 1986, reads:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction ... from any interlocutory judgments in actions of partition which determine the rights of the parties, or from any final judgment in the case ... but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.

In *First National Bank of Carrollton v. Eucalyptus,* 721 S.W.2d 165 (Mo.App. 1986), a trial court entered an interlocutory decree in a partition suit ordering the land sold instead of divided in kind. One party appealed, maintaining the trial court erred in that there was no evidence the parties would be prejudiced by partition in kind. The Western District of this Court stated the issue was whether the order was an interlocutory decree determining the rights of the parties, thereby making it appealable under § 512.020. 721 S.W.2d at 165. The Western District held that inasmuch as the appeal presented no issue regarding the rights of the parties in the property, but only the issue whether it should be sold or divided in kind, interlocutory appeal of the order was unauthorized by § 512.020. 721 S.W.2d at 167. Review would be available upon entry of a final judgment. *Id.* The opinion added: "The final judgment in a partition suit where a sale of the land is ordered is the order approving the sale and providing for the distribution of the sale proceeds." *Id. Accord: England v. Poehlman,* 359 Mo. 369, 221 S.W.2d 742, 744[1] (1949).

It appears from *Eucalyptus* that either Bock or Defendants could have appealed from the trial court's determination that the net proceeds from the sale of the tract would be divided half to Bock and half to Defendants. However, that determination did not become permanent and unalterable when no appeal was taken at that stage of the case.

In a partition suit, a judgment for partition and an order of sale are interlocutory. *Smith v. Hackleman*, 467 S.W.2d 61, 64 (Mo.App.1971); *Hiatt v. Hiatt*, 188 S.W.2d 863, 865[4] (Mo.App.1945). A trial court retains jurisdiction to modify an interlocutory judgment in a partition suit at any time before final judgment. *Lee's Summit Building & Loan Ass'n v. Cross*, 345 Mo. 501, 134 S.W.2d 19, 22–23[9] (1939). A party's failure to appeal from an interlocutory decree in partition determining his interest does not preclude him from obtaining appellate review of that determination on appeal from the final judgment approving the sale and directing distribution of the proceeds. *Id; Keith v. Keith*, 599 S.W.2d 214, 218–19[10] (Mo.App.1980).

Inasmuch as the trial court's determination of the parties' respective interests in the tract here was only interlocutory at the time Bock died and could have been changed by the trial court anytime before final judgment, we hold that even though a partition suit is a proceeding in rem, the instant case had not advanced far enough to destroy the joint tenancy. Plaintiff's first point is denied.

Her second point argues the "judgment" (presumably the docket entry of March 24, 1988) should be considered "final and dispositive concerning the respective rights of the parties in that it was sufficient to be the subject of appeal under [§] 512.020." Consequently, says Plaintiff, Bock's death "did not avoid the judgment."

This contention is answered by what we said in rejecting Plaintiff's first point. The "judgment" to which Plaintiff refers did not finally determine the respective interests of the parties, as the trial court could have modified such determination anytime before final judgment. Plaintiff's second point is denied.

Her third point avers the trial court erred in dismissing the suit because "the parties stipulated to the division of the respective interests in the real estate in equal shares and entered into the judgment, and should now be prohibited from denying this agreement." Accordingly, says Plaintiff, Bock's death "did not avoid the judgment."

In support of this point, Plaintiff cites *Terwilliger v. Terwilliger*, 29 Conn.Supp. 465, 293 A.2d 12 (1971). There, a parcel of land was owned by two individuals as joint tenants with right of survivorship. During the pendency of a suit to partition the land, the parties entered into a written agreement for entry of judgment. One party died before the judgment was entered. The court held a joint tenancy may be terminated by mutual agreement or by any conduct or course of dealing sufficient to indicate all parties have mutually treated their interests as belonging to them in common. 293 A.2d at 14[4]. The court found the acts of both joint tenants clearly evidenced an intention that the joint tenancy be severed and the right of survivorship be terminated. *Id.* The opinion declared the written agreement constituted a legally enforceable contract to settle the suit by entry of judgment for partition and sale. *Id.* at 14. Mutuality of the agreement, said the court, constituted adequate consideration. *Id.* The court ruled the partition action survived the death of the deceased tenant. *Id.*

In the instant case there was no settlement contract, written or oral. Bock's second amended petition averred his share of the tract was one-half and the Defendants' "interests" were one-half. In their answer, Defendants admitted Bock's interest was one-half, and alleged Gene was entitled to one-half. According to the docket entry of March 24, 1988, the parties, by counsel, announced that *based on the pleadings*, no dispute existed regarding partition and sale. The parties agreed to nothing outside the pleadings. Nowhere does the record indicate Defendants wanted to destroy the joint tenancy or terminate the right of survivorship until ownership was transferred upon completion of partition. There was no contract destroying the joint tenancy as there was in *Terwilliger*.

Plaintiff argues it would be unjust to allow Defendants to avoid the consequences of the "agreement" in that Bock assumed the tract would ultimately be par-

titioned. Plaintiff maintains Bock relied on the "agreement," and "felt no urgency to immediately sell his home."

We find no injustice. The docket entry of March 24, 1988, directed Bock's lawyer to prepare a judgment entry and assist in conducting a public sale. Failure to proceed with the sale during Bock's lifetime evidently allowed him to remain in possession the final 21 months of his life. This may be why the case came to a halt after March 24, 1988.

In any event, the absence of a settlement contract destroying the joint tenancy renders the instant case factually different from *Terwilliger*. Plaintiff's third point is denied.

Her fourth point:

 The trial court ruling of dismissal is in error because the judge who dismissed the case was not the same judge who previously had rendered the initial judgment.

██ This point is based on the following facts, of which we take judicial notice. *State ex rel. United Bonding Co. of Indianapolis v. Kennedy*, 364 S.W.2d 642, 643[1] (Mo.App.1963).

On March 24, 1988, the Judge of Division 2 of the Circuit Court of Camden County was The Honorable James A. Franklin, Jr. *Official Manual*, State of Missouri, 1991–1992, p. 227. He made the docket entry that date, treated by Plaintiff as a "judgment" in her first three points.

On November 8, 1988, The Honorable Mary Dickerson was elected Judge of Division 2 of the Circuit Court of Camden County, succeeding Judge Franklin. *Official Manual*, State of Missouri, 1989–1990, p. 682; *Official Manual*, State of Missouri, 1991–1992, p. 228. Her term of office began January 1, 1989. § 478.010.1, RSMo 1986.

The "formal judgment" filed December 27, 1989, referred to in the fifth paragraph of this opinion, was signed by Judge Franklin, who by then had returned to the judiciary as an Associate Circuit Judge of the Circuit Court of Camden County. *Official Manual*, State of Missouri, 1989–1990, p. 253.

On November 6, 1990, Judge Franklin was elected Judge of Division 1 of the Circuit Court of Camden County, *Official Manual*, State of Missouri, 1991–1992, pp. 227 and 517, for a term beginning January 1, 1991. § 478.010.1, RSMo 1986.

The order of May 7, 1991, from which Plaintiff appeals, was entered by Judge Dickerson. Plaintiff asserts that because no change of judge was ever taken from Judge Franklin per Rule 51.05, Missouri Rules of Civil Procedure (1991), Judge Dickerson had no authority to enter the order.

The docket sheet bears an entry dated December 17, 1987, setting the case for trial in Division 2 on March 24, 1988. It is inferable this evidenced an assignment of the case to Division 2 (if it had not already been assigned to that Division). Judge Franklin was the Judge of Division 2 on December 17, 1987, and remained so on March 24, 1988. No party claims the case was not pending in Division 2 on March 24, 1988, when Judge Franklin made the docket entry which Plaintiff denominates a "judgment."

As reported earlier, Judge Dickerson succeeded Judge Franklin as Judge of Division 2 on January 1, 1989. The record is bare of any entry or order transferring the case from Division 2 to any other division or judge after Judge Dickerson assumed office.[3]

Nothing in the record indicates Plaintiff questioned Judge Dickerson's authority to enter the order of May 7, 1991 (the order appealed from) until Plaintiff raised the issue in her brief. Indeed, after the case was remanded following our dismissal of

---

**3.** It is arguable Judge Franklin lacked authority to enter the formal judgment filed December 27, 1989, as he was no longer the Judge of Division 2 at that time, but instead was an associate circuit judge and the record contains no order transferring the case from Division 2 to him. This may be why Plaintiff treats the docket entry of March 24, 1988, as a "judgment." We need not address the validity of the formal judgment of December 27, 1989, in adjudicating this appeal.

the first appeal,[4] Plaintiff sought a writ of mandamus from us commanding Judge Dickerson to enter an order substituting Plaintiff for the deceased Bock in this case. Such relief became unnecessary when Judge Dickerson entered the order of substitution April 26, 1991, referred to earlier in this opinion.

*State v. Purdy*, 766 S.W.2d 476 (Mo.App. 1989), is analogous, though not identical, to the circumstances here. In *Purdy*, a judge who disqualified himself on his own motion later presided at the trial. On appeal, the accused argued this was error. The Eastern District of this Court held a judge who disqualifies himself or who has been disqualified by a party has no further right to hear the case. *Id.* at 478[4]. However, explained the opinion, parties can waive the disqualification, expressly or by conduct, and if they do they cannot thereafter complain about the judge's participation. *Id.* at 478–79. In support of that holding, the Eastern District relied on *Little Tarkio Drainage Dist. No. 1 v. Richardson*, 237 Mo. 49, 139 S.W. 576, 582 (banc 1911), and *Prather v. Prather*, 263 S.W.2d 57, 59 (Mo. App.1953).

The same rationale applies here. Inasmuch as Plaintiff (a) sought a writ from us commanding Judge Dickerson to enter an order substituting Plaintiff for the deceased Bock, and (b) afterward registered no objection in the trial court to Judge Dickerson ruling on Defendants' motion to dismiss, we hold that Plaintiff, by her conduct, waived any contention that Judge Dickerson was not the judge to whom the case was assigned.

 Plaintiff's fourth point lacks merit for another reason. A court is a continuous institution regardless of changes in personnel of its judges during the course of litigation. *St. Louis Southwestern Ry. Co. v. Henwood*, 157 F.2d 337, 342[4] (8th Cir.1946), *cert. denied*, 330 U.S. 836, 67 S.Ct. 965, 91 L.Ed. 1282; *cert. denied*, 330 U.S. 836, 67 S.Ct. 967, 91 L.Ed. 1283, *and reh'g denied*, 331 U.S. 870, 67 S.Ct. 1749, 91 L.Ed. 1872; *cert. denied*, 330 U.S. 836, 67 S.Ct. 969, 91 L.Ed. 1283 (1947).

A successor judge takes up litigation where his or her predecessor left it unless justice demands otherwise in a particular case. *Henwood*, 157 F.2d at 342[5].

Judge Dickerson, the successor to Judge Franklin as Judge of Division 2, was authorized to take up the instant case where it lay upon Judge Franklin's departure and, absent a change of judge, to proceed with it to completion. Plaintiff's fourth point is denied.

Plaintiff's fifth, and final, point asserts dismissal of the instant case was erroneous "because the agreement and subsequent judgment ordering the partition worked an equitable conversion at which time both parties became vested with an interest in personalty worth one-half the value of the proceeds of the partition sale of the realty." Plaintiff bases this point on the theory there was an agreement to partition the property and "obvious consideration of property rights being given from both parties, making the agreement binding."

As pointed out in our discussion of Plaintiff's third point, the parties agreed to nothing other than what was established by the pleadings. Consequently, the factual premise for Plaintiff's fifth point is nonexistent. Furthermore, the fifth point is simply another way of arguing the instant case had advanced far enough at the time of Bock's death to destroy the joint tenancy. We held otherwise in rejecting Plaintiff's first and second points. The fifth point is denied, and the order of dismissal is affirmed.

PARRISH, J., concurs.

PREWITT, P.J., dissents and files dissenting opinion.

PREWITT, Presiding Judge, dissenting.

I respectfully dissent. There is, as the principal opinion states, considerable authority for holding that filing a petition for partition does not destroy a joint tenancy. As there appears to be no Missouri authori-

---

**4.** Footnote 1, *supra*.

ty on this question, this court is free to hold, and should hold otherwise.

Plaintiff's decedent had the right to destroy the joint tenancy by conveyance or partition. *Remax of Blue Springs v. Vajda & Co., Inc.,* 708 S.W.2d 804, 806 (Mo. App.1986); *Johnson v. Woodard,* 356 S.W.2d 526, 528 (Mo.App.1962). He elected to proceed by partition. Had he made a conveyance, apparently this appeal would not have occurred.

I believe this court should hold that filing a suit for partition destroyed the joint tenancy and the action should survive. Where a party has a legal right affecting his property and exercises that right by filing a law suit, it should not be denied by death of that party. To hold otherwise encourages delay, particularly where the plaintiff is older or in ill health. Certain personal actions such as dissolution where reconciliation often occurs may appropriately be treated differently. The delay here appears to be attributed to the decedent, but that should not change the result.

The principal opinion refers to *Cobb v. Gilmer,* 365 F.2d 931, 933 (D.C.Cir.1966), noting that it says if the power to demand partition survived the death of a joint tenant, his representative could sue for partition thereby destroying the element of survivorship. That does not necessarily follow. If there is no partition suit pending at the time of death, then survivorship exists and the property passes to the surviving joint tenant. Electing to convey and conveying immediately destroys the survivorship. Electing to, and filing a suit for partition should do the same if the suit is pursued by the plaintiff or his estate to final judgment. If the suit is not, then the suit should be treated the same as if it was never filed. Plaintiff's personal representative wants to pursue the suit and should be allowed to do so.

I would reverse and remand for further proceedings.