CENTRAL BANK OF KANSAS CITY, Respondent,

v.

Donald V. COSTANZO, Respondent,

Douglas Adams, Appellant,

Carl Artese, Respondent,

Kian Shafe, Respondent.

No. WD 47952.

Missouri Court of Appeals, Western District.

April 12, 1994.

James Franklin Ralls, Jr., Kansas City, for appellant.

Eugene J. Twellman and Rebecca L. Jackson, Kansas City, for Central Bank of Kansas City.

Marvin Ferguson, North Kansas City, for Donald V. Costanzo.

Floyd A. White, Jr., Kansas City, for Carl Artese.

Michael Patrick Keleher, North Kansas City, for Kian Shafe.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

Douglas Adams appeals from the trial court's judgment entered in favor of Central Bank of Kansas City (Central Bank) in this

action on a promissory note. The sole issue on appeal is whether the trial court erred in entering a judgment based upon evidence adduced at a hearing held before another judge. The judgment is reversed and the cause remanded.

On June 6, 1988, Adams, Donald Costanzo, Carl Artese and Kian Shafe executed a promissory note in the amount of $186,-022.55, with eleven per cent annual interest, payable to Central Bank. After Central Bank was given a security interest in certain real estate in Arizona, the proceeds of the note were provided to Costanzo. Thereafter, the obligations on the note were extended on three separate occasions. According to the terms of the last extension, the entire balance of the note became due on February 15, 1991 and the interest rate was changed to twelve per cent. Adams and his colleagues failed to pay the note on time, and Central Bank filed suit against all four makers on May 13, 1991.

Adams did not file a timely answer to the petition, and Central Bank filed a motion for default judgment. On August 14, 1991, Adams filed a motion for leave to file an answer out of time and a motion requesting that the trial court deny Central Bank's motion for default judgment. On August 23, 1991, Jackson County Circuit Judge Donald L. Mason granted Adams' motion to file out of time and denied Central Bank's motion for default judgment. On September 19, 1991, Central Bank filed a motion for summary judgment on the issue of liability, which on January 24, 1992, the court sustained upon submission of an appropriate judgment entry. On February 3, 1992, the court entered summary judgment as to liability only against Adams and in favor of Central Bank.

Next, an evidentiary hearing was scheduled for February 18, 1992 to determine the issue of damages. Counsel for Adams appeared and filed a motion to set aside the summary judgment on the issue of liability. The basis for the motion, at least in part, was Adams' allegation that Central Bank and

Costanzo had entered into a settlement agreement which eliminated Adams' liability in the pending action. The court suspended the hearing pending its review of the motion and granted the parties leave to file briefs on the issue, which they did. On April 8, 1992, the court entered an order overruling Adams' motion and rescheduled the evidentiary hearing on the issue of damages.

That hearing was held on June 3, 1992. At the conclusion of the hearing, during which witnesses were called and cross-examined and other evidence was produced,[1] Central Bank submitted a proposed form of judgment. Judge Mason then took the matter under advisement and gave the parties one additional "opportunity to submit briefs on Mr. Adams' possible change of liability since entry of [partial] summary judgment" against him. On July 1, 1992, Adams filed suggestions in support of modifying the February 3, 1992 order imposing liability on him, and nine days later, Central Bank filed suggestions in opposition.

In March 1993, after Judge Mason had been assigned to the criminal docket, the case was transferred to another Jackson County Circuit Judge, the Honorable William M. Ely. While the case was assigned to him, Judge Mason never entered a final judgment or made a ruling on the issue briefed by the parties in July, 1992: whether the interlocutory order of default against Adams should be modified.

On March 30, 1993, Judge Ely scheduled a pre-trial conference for May 13, 1993 and set trial for June 1, 1993. Meanwhile, on April 21, 1993, Central Bank filed a request for ruling on Adams' pending motion and attached the proposed form of judgment previously submitted to Judge Mason, attesting to its continuing accuracy.

There were two pre-trial conferences. During the first one, which occurred on May 13, 1993, the parties and Judge Ely discussed the general background of the case and its current status. During the second pre-trial conference on May 21, 1993, Judge Ely told

---

1. This testimony and other evidence related to the amount due under the note, including the amount of accrued interest and the reasonable attorney's fees incurred during collection efforts, after taking into account the value of the unliquidated collateral and the effect of the settlement with Costanzo.

the parties he believed a trial was unnecessary and he could enter judgment based on the pleadings and the legal file since the issue of liability had already been determined and a hearing on damages had already been held by Judge Mason. Adams then asked Judge Ely to transfer the case back to Judge Mason so the same judge who heard all the evidence and requested the briefs on Adams' pending motion could enter an appropriate order, but Judge Ely expressly declined to do so, apparently in the interest of judicial economy.[2]

On June 1, 1993, Judge Ely entered final judgment against Adams and in favor of Central Bank in the amount of $129,767.17 (plus accrued interest and attorney's fees), using the unmodified proposed form of judgment originally submitted to Judge Mason on June 3, 1992. This appeal followed.

■ The standard of review in this case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." In his sole point on appeal, Adams contends Judge Ely erred in entering final judgment against him without having heard the evidence presented before Judge Mason at the June 3, 1992 evidentiary hearing on the issue of damages. We agree.

■ Under Missouri law, a successor judge is without power to render a judgment based on testimony and evidence heard by his predecessor absent a stipulation by the parties. *Helton Constr. Co. v. Thrift*, 865 S.W.2d 419, 422–23 (Mo.App.1993); *Lansing v. Lansing*, 736 S.W.2d 554, 558 (Mo.App. 1987); *Smith v. Smith*, 558 S.W.2d 785, 790 (Mo.App.1977).[3] *But cf.* Rule 79.01 (discussed below). This point of law has been adopted in the vast majority of jurisdictions which have considered the question. *See* J.R. Kemper, Annotation, *Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor*, 22 A.L.R.3d 922, § 3(b) (1968 & Supp.1993).

It is uncontroverted there was no such stipulation in this case. Judge Ely did not personally hear the testimony and evidence received by Judge Mason at the damages hearing on June 3, 1992. In addition, he did not have a transcript to assist him in making his June 1, 1993 ruling assessing damages against Adams, because a transcript of that hearing was not prepared by the court reporter until August 24, 1993.[4]

Thus Judge Ely signed an entry of judgment prepared by Central Bank without having personally heard or even reviewed any of the evidence presented to Judge Mason on June 3, 1992 concerning the amount actually owed by Adams to Central Bank. Since there was no stipulation by the parties permitting him to pass on the evidence relating to damages heard by Judge Mason, under *Helton, Lansing,* and *Smith,* Judge Ely had

2. No record was made of either pre-trial conference, so these accounts are derived from statements made by the parties during oral argument and in their briefs.

3. There is language in the Southern District case of *Heintz v. Hudkins*, 824 S.W.2d 139, 146 (Mo. App.1992), to the effect that, unless justice demands otherwise, "a successor judge takes up litigation where his or her predecessor left it." The sole authority cited for that proposition was a 1946 Eighth Circuit Court of Appeals case in which the predecessor judge died before rendering final judgment in a bankruptcy reorganization proceeding. The Southern District did not mention *Heintz* in *Thrift,* which was decided only a year and a half later and adopted the opposite view expressed in *Lansing* and *Smith,* both East-

ern District cases. In any event, we decline to follow *Heintz* in this case.

4. Central Bank claims it is "unknown" whether Judge Ely had a transcript. We need not decide whether the result in this case would be any different if Judge Ely had read a transcript of the hearing prior to entering judgment. We do note that in *Smith,* the successor judge's actions were invalidated despite the fact he had available to him a copy of the transcript of the hearing conducted by his predecessor. As the court observed: "[T]o use that evidence [the transcript] the court would be required to weigh and compare the oral testimony of witnesses without having the opportunity to hear and observe those witnesses on the stand." *Smith,* 558 S.W.2d at 790.

no authority to enter final judgment in this case and the cause must be reversed and remanded for final disposition.

Central Bank, citing *Fields v. Gibson*, 840 S.W.2d 884, 886 (Mo.App.1992), argues that because Adams "inexcusably fail[ed] to timely appear for trial" on June 1, 1993, Judge Ely properly heard evidence and rendered judgment against him "as if the case were 'in default.'"

We reject this claim. To begin with, Adams did not "inexcusably" fail to appear on June 1, 1993. He was not in court that day because Judge Ely made it clear during the pre-trial conference on May 21, 1993 that no trial was necessary and he felt he could render final judgment without receiving further evidence or testimony. Furthermore, there was no "trial" of any kind involving the parties that day. Central Bank's attorney merely made a telephone call to Judge Ely during which he made certain representations and asked Judge Ely to sign the proposed judgment entry against Adams. This conversation did not constitute a "trial" at which Judge Ely received evidence and rendered judgment in the sense contemplated in *Fields*.

Central Bank also argues that Rule 79.01, which provides for assignment of a successor judge in case of disability, allowed Judge Ely to render final judgment in this case. However, Rule 79.01 has no application here, because it is limited to situations where the predecessor judge is unable to perform his duties "by reason of his going out of office, death, sickness, or other disability." There is nothing in the record to suggest any of these circumstances were applicable to Judge Mason.

■ Finally, Central Bank argues that because this court "has the ability to review all the pleadings and other filings, including the transcript of the June 3, 1992 evidentiary hearing on [Central Bank's] damages, to determine whether [Central Bank's] damages were correctly set out in the Judgment Entry signed by Judge Ely on June 1, 1993,"

under Rule 84.14 we should enter such judgment as ought to have been given by Judge Mason.[5]

We decline to do so. To begin with, we cannot, on this appeal, enter judgment based on the evidence adduced before Judge Mason because the portion of this lawsuit with which he was involved did not result in a final, appealable judgment or order. *Thrift*, 865 S.W.2d at 422–23.

■ Furthermore, even if we had the power to do so, this is not an appropriate case for entry of final judgment under Rule 84.14. Final disposition of a case on appeal under Rule 84.14 presupposes that no further factual adjudication is necessary, *McIlroy v. Simmons*, 832 S.W.2d 949, 952–53 (Mo.App.1992), and an appellate court should not use its authority under Rule 84.14 unless there is a record and evidence upon which it can render final judgment with some degree of confidence in the reasonableness, fairness and accuracy of the outcome and the appellate briefs are sufficient to allow it to decide the underlying legal issues presented. *State ex rel. Mayfield v. City of Joplin*, 485 S.W.2d 473, 475 (Mo.App.1972).

When this case was transferred to Judge Ely, not only had Judge Mason not yet ruled as to the amount of Central Bank's *damages* (a factual issue), but, based on the arguments presented in the briefs requested by Judge Mason at the conclusion of the damages hearing, there was apparently still some question whether Central Bank's settlement with Costanzo eliminated Adams' *liability* on the note (a legal issue not addressed in the briefs on appeal). Judge Mason is in a superior position to resolve those remaining factual and legal issues. *See, e.g., Lancaster v. Simmons*, 621 S.W.2d 935 (Mo.App.1981) (where legitimate dispute existed between parties as to whether interest rate called for in contract had been modified by subsequent agreement, amount of interest to be paid was a proper matter for remand under Rule 84.-14).

---

**5.** Rule 84.14 provides, in relevant part: "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, *or give such judgment as the court ought to give.*" (Emphasis added.)

We reverse the judgment of the trial court and remand with directions that the cause be transferred to Judge Mason for final disposition, including a ruling on the liability issues raised in the briefs requested by Judge Mason on June 3, 1992 and filed by the parties in July, 1992.[6]  *Rozansky Feed Co. v. Monsanto Co.,* 579 S.W.2d 810, 813 (Mo.App. 1979).

All concur.

---

6. Central Bank's request for attorney's fees in-  curred defending this appeal is denied.