**Brooke Anne NIX, Petitioner–
Respondent,**

v.

**Jerry Michael NIX, Respondent–
Appellant.**

No. 20649.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 18, 1996.

---

1. All statutory citations are RSMo 1994.

James M. McClellan, Sikeston, for appellant.

Richard Whiffen, Sikeston, for respondent.

CROW, Presiding Judge.

This is the second time a dispute between Brooke Anne Nix ("Mother") and Jerry Michael Nix ("Father") regarding their three children has reached this court. The first occasion was *Nix v. Nix*, 862 S.W.2d 948 (Mo.App. S.D.1993). There, this court affirmed a decree of dissolution of marriage wherein (a) Mother was awarded sole legal custody of the children, and (b) Mother and Father were awarded joint physical custody, with Mother having the children under her care and supervision a greater amount of time than Father. *Id.* at 950–51.

The present litigation began June 15, 1994, when Father filed a "Motion to Modify Decree of Dissolution as to Child Custody and Support." Sixteen months later, after two days of trial, the trial court entered an order leaving the dissolution decree intact.[1] Father appeals.

Because the first of Father's four points relied on raises a procedural issue which ordains the outcome of this appeal, we begin this opinion with a chronology of the events pertinent to that issue.

June 18, 1994. Mother is served with summons and a copy of Father's motion to modify.

August 11, 1994. Father and his lawyer appear in trial court before Judge Anthony J. Heckemeyer. Judge Heckemeyer finds Mother was lawfully summoned by personal service and is in default. Father presents evidence. Judge Heckemeyer sets forth these rulings on docket sheet:

"Custody of the minor children transferred to the father. Wife [sic] shall pay child

---

1. The trial court's order provides: "[T]he terms of the October 30, 1991 Decree of Dissolution remain in effect." According to the record handed us, the dissolution decree was not entered October 30, 1991. The record shows the parties and their lawyers appeared in the trial court for the dissolution hearing October 30, 1992. The dissolution decree was signed by the trial court and filed by the clerk December 21, 1992.

support of $248.89 per month. She shall have reasonable visitation, but also rotate weekends and holdiays [sic] and 30 days in summer. Decree to be submitted by [Father's lawyer]."

August 12, 1994. Judge Heckemeyer signs and files "Modification Decree" consistent with rulings of August 11, 1994.

September 12, 1994. Mother files "Motion to Modify and for Stay Order," averring that the "Order to Modify" was "granted without jurisdiction." In support of that theory, Mother pleads that the original petition in the dissolution action was filed in October, 1991, with Judge Heckemeyer presiding; that Father thereafter filed a motion for change of judge, which was eventually granted; and that the case was ultimately assigned to Judge David C. Mann, who presided at the dissolution hearing.[2] Mother's motion prays "that the Motion to Modify[3] be modified and/or rescinded to reflect the terms of the Original Decree, and that a Stay Order be issued to stay the Order to Modify issued August 11, [sic] 1994."

That same day (September 12, 1994), Judge Heckemeyer signs and files the following order:

"[The court] hereby orders that the Order Modifying Decree of Dissolution of Marriage [sic] entered on August 11, [sic] 1994 be and hereby is, stayed, and the Decree of Dissolution of Marriage previously entered on October 30, [sic] 1992, *is in effect*[4] pending further order of the Court.

IT IS SO ORDERED."

October 13, 1994. Judge Heckemeyer recuses.

January 26, 1995. Supreme Court of Missouri assigns Judge T. Lynn Brown.

February 14, 1995. Father files "Motion to Rescind Stay Order," averring that Judge Heckemeyer's order of September 12, 1994,

is invalid because, *inter alia,* the Rules of Civil Procedure "do not provide for any Stay Order," and Rule 74.06, which establishes a procedure to obtain relief from judgments and orders, "has not been complied with by [Mother] in this case." Father's motion is accompanied by an application for a writ of habeas corpus commanding Mother to produce the children in the trial court. The prayer for such relief is predicated on the assumption that the Modification Decree of August 12, 1994, is valid and enforceable.

March 29, 1995. Trial court denies Father's "Motion to Rescind Stay Order." Consistent with that ruling, court issues no writ.

May 3, 1995. Father files application for leave to file a "First Amended Motion to Modify Decree of Dissolution as to Child Custody and Support." The proposed amended motion accompanies the application. Like Father's motion of June 15, 1994, the proposed amended motion seeks modification of the child custody and support provisions in the dissolution decree. Father also files "Motion to Reconsider [Father's] Motion to Set Aside Stay Order Entered 9/12/94 and 3/29/95."

June 16, 1995. Trial court grants Father leave to file first amended motion to modify.

August 10, 1995. First day of trial on Father's first amended motion to modify. At outset, trial court denies Father's "Motion to Reconsider [Father's] Motion to Set Aside Stay Order Entered 9/12/94 and 3/29/95."

August 16, 1995. Second day of trial.

October 19, 1995. Trial court enters order from which Father brings this appeal.

Father's first point relied on avers: "The [trial] court erred and abused its discretion in denying Father's Motion to Rescind Stay Order." That motion, as we have seen, was filed February 14, 1995, and denied March 29, 1995.

---

**2.** Footnote 1, *supra.* Judge Mann signed the dissolution decree.

**3.** We infer Mother meant "Modification Decree" instead of "Motion to Modify."

**4.** The words "is in effect" appear as a handwritten insert in the order, hence we have italicized

them. According to a letter from Father's lawyer to the circuit clerk December 8, 1994, the italicized words were not in the order when Judge Heckemeyer signed it. When and by whom they were added is unexplained. However, handwritten initials appearing to be "AH" are situated immediately after the italicized words.

As explained below, Father's characterization of Judge Heckemeyer's order of September 12, 1994, as a "Stay Order" is a misdescription. However, for convenience we shall use that designation.

■ The Stay Order did more than merely postpone enforcement of the Modification Decree entered August 12, 1994; the Stay Order provided that the decree of dissolution of marriage "is in effect" pending further order of the court. Thus, the Stay Order stripped Father of the custody and child support awards granted him in the Modification Decree. The effect of the Stay Order was that the Modification Decree was abrogated and the dissolution decree restored.

■ We therefore hold the Stay Order was an order vacating a judgment, i.e., an order vacating the Modification Decree. That conclusion raises the obvious question of whether, on September 12, 1994, Judge Heckemeyer had the power to vacate the Modification Decree. In seeking the answer, we begin by attempting to ascertain the rule relied on by Mother in her "Motion to Modify and for Stay Order" (the motion that prompted the Stay Order).

As reported earlier, Mother's motion averred Judge Heckemeyer was without jurisdiction to enter the Modification Decree because he had been disqualified in the dissolution action. Mother's motion pled no other ground for vacating the Modification Decree.

In examining the rules authorizing relief from judgments, we look back to Missouri Rules of Civil Procedure (1994), the version in effect when Judge Heckemeyer entered the Modification Decree and the Stay Order. Rule 74.06(b)(4) authorizes a court to relieve a party from a final judgment on the ground that the judgment is void. Arguably, Mother's averment that Judge Heckemeyer was without jurisdiction to enter the Modification Decree is an allegation that the Modification Decree is void.

However, nowhere in Mother's brief does she cite Rule 74.06(b)(4) as authority for the Stay Order. Furthermore, the Stay Order does not declare the Modification Decree void. The Stay Order implicitly treats the Modification Decree as a valid adjudication by endeavoring to postpone its effect and providing that the dissolution decree "is in effect" until further order. Had Judge Heckemeyer believed the Modification Decree was void, he could have declared it so in the Stay Order, thereby automatically leaving the dissolution decree intact. Accordingly, we conclude Judge Heckemeyer did not utilize Rule 74.06(b)(4) in entering the Stay Order.

■ Our conclusion is buttressed by Judge Heckemeyer's recusal a month after he entered the Stay Order. Had he believed he lacked authority to enter the Modification Decree, he would have had no reason to recuse, as he would not have been the judge before whom the modification proceeding was pending.[5]

5. We do not overlook the contention in Mother's brief that Judge Heckemeyer "had no authority to enter any order." Mother's rationale, as we understand her, is that inasmuch as (a) Father disqualified Judge Heckemeyer in the dissolution proceeding, and (b) Judge Mann presided at the dissolution hearing and signed the dissolution decree (footnote 2, *supra* ), Judge Mann alone was authorized to hear and determine Father's motion to modify when it was taken up as a default matter on August 11, 1994. Mother cites no case in support of that hypothesis; she relies solely on Rule 51.05(a), which authorizes a change of judge in any civil action. The version of Rule 51.05(a) that took effect January 1, 1995, provides that motions to modify child custody, child support, or spousal maintenance "shall not be deemed to be an independent civil action unless the judge designated to rule on the motion is not the same judge that ruled on the previous independent civil action." The order of the Su-

preme Court of Missouri adopting the current version of Rule 51.05(a) appears in volume 870–871 S.W.2d Missouri Cases, pp. XXIX to XXXI. The current version of Rule 51.05(a) could not have affected Judge Heckemeyer's authority to enter the Modification Decree on August 12, 1994, as the current version was not in effect on that date. The version of Rule 51.05(a) in effect on that date did not mention motions to modify.

Furthermore, in *Prather v. Prather*, 263 S.W.2d 57 (Mo.App.1953), a judge who was disqualified by a party in a divorce action later ruled on a motion to quash an execution to collect sums allegedly due for alimony pendente lite and attorney fees. *Id.* at 58. In an appeal from the order adjudicating the motion, the appellant maintained the order was void because the disqualified judge lacked authority to enter it. *Id.* The appellate court held the action of the disqualified judge in hearing and determining the motion

Mother's brief cites three rules which, as we comprehend her argument, conferred authority on Judge Heckemeyer to enter the Stay Order.

The first rule cited by Mother is Rule 73.01(a)(5). However, when Judge Heckemeyer entered the Stay Order, Rule 73.01(a) had no subsection 5. *See:* Missouri Rules of Civil Procedure (1994). Subsection 5 was added to Rule 73.01(a) effective January 1, 1995. Vol. 868–869 S.W.2d Missouri Cases, pp. XXVII to XXIX. Obviously, Judge Heckemeyer could not have relied on Rule 73.01(a)(5).

The second rule cited by Mother is Rule 74.05(d). It authorizes a court to set aside a default judgment upon a motion stating facts constituting a meritorious defense and for good cause shown. We find nothing in Mother's motion of September 12, 1994, setting forth either a meritorious defense to Father's motion to modify or good cause for her failure to respond to the summons within the required thirty-day period, thereby allowing Father to obtain the Modification Decree by default. We therefore conclude Judge Heckemeyer did not rely on Rule 74.05(d).

The third rule cited by Mother is Rule 74.06(c). It specifies no ground for relieving a party from a judgment; it merely establishes a time limit for seeking relief on certain grounds in subdivision "(b)" of Rule 74.06. Consequently, Rule 74.06(c) conferred no authority on Judge Heckemeyer to enter the Stay Order.

By process of elimination, we deduce Judge Heckemeyer relied on Rule 75.01 in entering the Stay Order. That Rule provides, in pertinent part:

"The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time. . . ."

The Modification Decree was entered August 12, 1994. Judge Heckemeyer entered the Stay Order September 12, 1994, the thirty-first day after the Modification Decree. However, the thirtieth day (September 11, 1994) was a Sunday. Under Rule 44.01(a), the deadline was extended to the end of the ensuing day, Monday, September 12.[6]

Although the Stay Order was timely entered, that does not mean it was properly entered. One of Father's attacks on the Stay Order in his first point is that Judge Heckemeyer entered the order without giving Father an opportunity to be heard.

Nothing in the record shows Father was given notice before Judge Heckemeyer entered the Stay Order. Indeed, the copy of Mother's "Motion to Modify and for Stay Order" in the record on appeal contains no certification that a copy was served on Father or his lawyer.

Rule 75.01, quoted in part above, requires a trial court to give the parties an opportunity to be heard before vacating a judgment. By waiting to file her "Motion to Modify and for Stay Order" until the last day on which the trial court was authorized to act under Rule 75.01, Mother made it impossible for

"did not present a question of jurisdiction in its technical sense but was a matter of error, and not having been objected to at the time, was waived." *Id.* at 59[6]. *Accord: Ferguson v. Pony Express Courier Corp.*, 898 S.W.2d 128, 130 (Mo. App. W.D.1995).

Mother, being in default, failed to appear and object when Judge Heckemeyer heard Father's motion to modify on August 11, 1994. Additionally, on September 12, 1994, Mother presented her "Motion to Modify and for Stay Order" to Judge Heckemeyer, not Judge Mann. Moreover, as recounted in the next paragraph of this opinion, Mother cites three rules which, according to her, authorized Judge Heckemeyer to enter the Stay Order. Applying *Prather* and *Ferguson*, we hold Mother has waived any objection she might

have raised to Judge Heckemeyer hearing Father's motion to modify as a default matter and entering the Modification Decree. *Cf. Heintz v. Hudkins*, 824 S.W.2d 139, 145–46[10] (Mo.App. S.D.1992).

6. The deadline would have been Monday, September 12, 1994, even if the thirty-day period began running August 11, 1994 (the day Judge Heckemeyer heard Father's motion to modify and made the rulings set forth formally in the Modification Decree). That is because the thirtieth day after August 11, 1994, was September 10, 1994, a Saturday. Under Rule 44.01(a), the deadline would have been extended to the end of the day on Monday, September 12.

the trial court to give Father notice and an opportunity to be heard on Mother's motion.

In *Swanson v. D & R Enterprises*, 899 S.W.2d 134 (Mo.App. S.D.1995), this court discussed the notice requirement of Rule 75.01 [7] in holding the trial court erred in vacating a judgment for the plaintiffs after a non-jury trial. *Id.* at 135. This court said:

> "The order [vacating the judgment] cannot be sustained on the basis of Rule 75.01 because it was entered without giving the plaintiffs 'an opportunity to be heard.' Rule 75.01 authorizes vacation of a judgment only 'after giving the parties an opportunity to be heard and for good cause.' Since the opportunity was not given here, it is unnecessary to determine whether good cause was shown.
>
> . . . .
>
> The trial court's order [vacating the judgment] was void for lack of notice to plaintiffs. . . ."

*Id.* at 136–37.

Consistent with *Swanson,* we agree with Father that Judge Heckemeyer erred in entering the Stay Order without giving Father notice and an opportunity to be heard.

■ That holding presents the obvious question of whether Father can raise that claim of error in this appeal. As reported earlier, Father brings this appeal from Judge Brown's order of October 19, 1995, denying Father's first amended motion to modify the dissolution decree. The order appealed from was entered thirteen months after the Stay Order.

An alert reader will recognize that if the Stay Order was appealable, the time for appealing it expired long before Father filed his notice of appeal. Consequently, we must determine whether the Stay Order was appealable.

In *Dennis v. Jenkins,* 422 S.W.2d 393 (Mo. App.1967), the trial court entered a default judgment for the plaintiff; later, on motion of the defendant, the trial court vacated the judgment 27 days after its entry. *Id.* at 394.

On appeal by the plaintiff from the order vacating the judgment, the court held:

> "There is no basis for this appeal on the ground that it was taken from an order granting a new trial. In the early case of *Crossland v. Admire,* 118 Mo. 87, 24 S.W. 154, it was held that an order vacating a default judgment during the period of the court's control over its judgment is not 'the granting of a new trial.' That view is still held. Therefore there is no foundation for this appeal unless it appears that the vacated judgment was 'a final judgment' within the contemplation of Section 512.020.
>
> " . . . The trial court is granted extensive control over its judgment for 30 days after entry by Civil Rule 75.01 V.A.M.R. which provides that: 'The trial court retains control over judgments during the 30 day period after entry of judgment and may vacate, reopen, correct, amend or modify its judgment for good cause within that time.' During this 'incubation period' a default judgment is said to be 'within the breast of the court.' . . .

Considering that the default judgment in the instant case was vacated within the 30 day period of the trial court's control, it is manifest that *it never became a final judgment.* It is equally apparent that the order vacating the non-final default judgment was not itself a 'final judgment' or a 'special order after final judgment' within contemplation of Section 512.020. We therefore conclude that plaintiff never acquired the right to appeal.

This conclusion marks no innovation in the law. For many years it has been consistently ruled by all four appellate courts of this state that there could be no appeal from an order setting aside a default judgment entered during the period of time the trial court retained its right to control the judgment."

422 S.W.2d at 394–95 [citations omitted; emphasis in original].

In *Byrd v. Brown,* 613 S.W.2d 695, 698 n. 1 (Mo.App. S.D.1981), this Court said:

---

**7.** The events in issue in *Swanson* occurred in 1994, hence, like the instant case, the 1994 version of Missouri Rules of Civil Procedure applied in *Swanson.*

"[A]n order made within 30 days setting aside a default judgment and granting a trial, as distinguished from a new trial, is not appealable. *Crossland v. Admire,* 118 Mo. 87, 24 S.W. 154 (1893); *Altman v. Werling,* 509 S.W.2d 787 (Mo.App.1974); *Steffan v. Steffan,* 390 S.W.2d 587 (Mo. App.1965). *In re Marriage of Richardson,* 540 S.W.2d 227 (Mo.App.1976) is not considered as being in conflict with this decision as in that case the judgment was in the nature of a default judgment."

A later case reaching the same result and citing additional precedent is *Mid–States Tubulars, Inc. v. Maverick Tube Corp.,* 735 S.W.2d 142, 144–45[2] (Mo.App. E.D.1987).

Applying the above authorities, we hold the Stay Order was unappealable, hence the present appeal is Father's first opportunity for appellate review of the Stay Order. In so holding, we emphasize the Stay Order set aside a default judgment, not a judgment entered after a trial. Accordingly, cases such as *Swanson,* 899 S.W.2d 134, addressing appealability of an order per Rule 75.01 vacating a judgment *after a trial* are inapplicable.

■ Having decided the Stay Order was wrongly entered and this appeal is Father's first opportunity to challenge it, we turn to the specific attack in Father's first point. As noted earlier, Father maintains Judge Brown erred on March 29, 1995, in denying Father's motion to rescind the Stay Order. That ruling was made four months before trial. Father raised the issue again in his motion to reconsider, filed May 3, 1995, which Judge Brown denied at the start of trial.

On this record, we hold Father preserved the issue in the trial court and did not abandon it by going to trial on his first amended motion to modify. Inasmuch as the unappealable Stay Order vacated the Modification Decree, Father had no choice except to go to trial if he wanted to gain legal custody and primary physical custody of the children.

■ Our resolution of the issues addressed thus far brings us to the inevitable conclusion that the trial court erred in refusing to rescind the Stay Order on March 29, 1995, and August 10, 1995. That holding presents the question of what to do now. As explained earlier, the trial court, after two days of evidence, denied Father's first amended motion to modify the dissolution decree.

Had the trial court rescinded the erroneous Stay Order, either on March 29, 1995, or at the outset of trial, there would have been no need to try Father's first amended motion to modify the dissolution decree, as the relief sought by that pleading had already been granted in the Modification Decree.[8] Because the trial court left the Stay Order undisturbed, Father had to litigate issues already adjudicated in the Modification Decree and got an adverse ruling on those issues after trial.

As one might expect, neither party cites a case factually identical to this one, and our independent research has failed to unearth anything like it. Unaided by precedent, we hold the only way to rectify this procedural imbroglio is to declare—as we must—that the issues litigated at trial were moot, hence the order of October 19, 1995, is a nullity. *Cf. Moore v. Harris Truck & Trailer Sales, Inc.,* 904 S.W.2d 101, 103 (Mo.App. E.D. 1995). Accordingly, that order is reversed and the Stay Order is vacated, thereby leav-

---

8. Mother, as we fathom a portion of the argument in her brief, embraces the notion that the Modification Decree was invalid because it was not denominated a "judgment." In support of that concept, Mother cites Rule 74.01(b). We suspect Mother meant to cite Rule 74.01(a), which, since January 1, 1995, has read:

"'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' is filed. The judgment may be a separate document or included on the docket sheet of the case."

Inasmuch as the Modification Decree was entered August 12, 1994, the version of Rule 74.01(a) that took effect January 1, 1995, is inapplicable. At the time the Modification Decree was entered, Rule 74.01(a) consisted solely of what is now the first sentence (quoted above). Nothing in that sentence mentions designating a judgment as a "judgment."

ing the Modification Decree intact. Those rulings make it unnecessary for us to consider Father's other three assignments of error.

The parties' rights and duties regarding custody and support of the three children are those set forth in the Modification Decree of August 12, 1994. Like all orders regarding child custody and support, the Modification Decree is subject to future modification if warranted.

MONTGOMERY, C.J., and PARRISH, J., concur.