

# Missouri Court of Appeals
## Southern District
### Division Two

JOHNNY ROBERTS, )
and DEBRA ROBERTS,[1] )
            )
            Plaintiffs-Respondents, )
            )    No. SD33992
     vs. )    Filed: March 23, 2016
            )
WAYNE J. SHAW, Deceased, )
BETTY J. SHAW, )
            )
            Defendants, )
            )
LINDA LANE, )
            )
            Defendant-Appellant, )
            )
and )
            )
RICHARD OGDEN, TRUSTEE )
FOR TOWN & COUNTRY BANK, )
            )
            Defendant. )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable David Gregory Warren, Senior Judge

### REVERSED AND REMANDED WITH DIRECTIONS

Linda Lane ("Lane") appeals the judgment of the trial court granting a 25-foot-wide

prescriptive easement to Johnny Roberts and Debra Roberts ("the Roberts"), across two tracts of

---

[1] When this cause of action commenced on August 17, 2004, plaintiffs were Johnny Roberts, Debra Roberts, James D. Roberts and Edna M. Roberts. James D. Roberts and Edna M. Roberts both died during the pendency of this case and their successors in interest are Johnny Roberts and Debra Roberts. Defendant Wayne Shaw also died during the pendency of this case and defendant Betty J. Shaw is his surviving spouse. Betty J. Shaw is an appellant in a separate case, *Roberts v. Shaw*, SD33993, also filed this date.

land—one owned by Lane, and the other owned by Betty Shaw ("Shaw"). In two points on appeal, Lane asserts the trial court erred in awarding a 25-foot-wide prescriptive easement to the Roberts, and that Judge Warren did not have the authority to issue such an order and judgment as the parties had not stipulated to his assignment as a successor judge. Point II is dispositive, and we therefore need not address Point I.

## Factual and Procedural History

This case hinges on the width of a prescriptive easement—that is, a private road—in favor of the Roberts, which runs across land owned by Lane and by Shaw.

On August 17, 2004, the Roberts filed a petition against Lane, Shaw, and Richard Ogden,[2] alleging Lane and Shaw had obstructed the Roberts' use of the road. Both Lane and Shaw's answers to the petition agreed that the Roberts were entitled to a prescriptive easement, but disputed the width necessary for the Roberts' continued use of the road.

On April 26, 2005, a bench trial was held before Judge Mary Sheffield. Testimony was received from the parties, as well as a number of other witnesses, concerning, in relevant part, the extent and nature of the road and the Roberts' use of the road.

On August 24, 2005, the trial court ordered the road to be surveyed and appointed "Elgin Surveying and Engineering, Inc." ("Elgin") to survey the roadway "as it exists, including the traveled portion of the roadway located on defendant Shaw and Lane's property, plus any width necessary to maintain said road, without the need to clear presently existing trees."

Elgin completed a survey on January 6, 2006, and revised it August 14, 2007. Neither the original survey, nor its amendment, contained any legal description for the easement, or any

---

[2] Richard Ogden was sued in his capacity as trustee under a promissory note and deed of trust with Town and Country Bank secured by Lane's property.

2

indication as to how wide the road easement should be. The record before us contains no indication that Elgin ever testified or that the survey was put into evidence.

On April 7, 2008, Judge Sheffield entered an "Order" containing specific findings of fact regarding the road, its use, and the two additional gates and fencing added by Lane. More specifically, Judge Sheffield ordered, in relevant part, that the Roberts were entitled to a "road access" across the properties of Lane and Shaw, "the extent of which shall be per Survey #R12098 by Elgin Surveying and Engineering, Inc., dated January 6, 2006." Judge Sheffield also ordered the road

> be a minimum of ten feet (10') wide except where the survey itself reflects that it is wider. At each gate the road will be given an additional three feet (3') width on each side in order for the Roberts to have sufficient room to get out of their vehicle to open the gate.

The Order, which was not a final judgment, did not make a specific finding of fact regarding the full width of the use of the road, nor did the Order contain a legal description.

On December 6, 2012, Elgin requested additional direction from the court, asking whether the easement should be "only 10 feet wide, or, probably a more realistic 20 or perhaps 30 feet?" There is no indication in the record that Elgin's inquiry was addressed.

In December 2012, before a final judgment was entered in the case, Judge Sheffield was appointed to the Missouri Court of Appeals. On January 1, 2013, Judge Warren was appointed to fill Judge Sheffield's remaining term, which ended on December 31, 2014. No evidentiary hearings were conducted after December 31, 2014.

On December 29, 2014, Judge Warren wrote the parties indicating that after a review of the court file, he had decided to "finalize the areas left open" in Judge Sheffield's April 4, 2008 Order without altering the findings already made. Judge Warren ordered a twenty-five-foot wide easement for the private road, and specified conditions for the future use of the road by the

3

parties. Judge Warren directed the Roberts' attorney to prepare a final judgment combining Judge Sheffield's Order and the findings and orders contained in his letter. However, he indicated that he did not believe the judgment could be final until a final description was received from Elgin, but the judgment could refer to the "attached description."

On December 31, 2014, Judge Warren left the bench before any final judgment was filed, but was reassigned to the case as a "senior judge" on January 13, 2015.

On May 14, 2015, Judge Warren entered a judgment giving the Roberts a twenty-five-foot wide road easement for ingress and egress across the properties of Lane and Shaw. The judgment contained an "**Exhibit A**" purporting to be the "land of Defendant, Betty J. Shaw and Defendant, Linda Lane, subject to the easement is [sic] described on the attached **Exhibit A**." It appears on its face that the description on Exhibit A was prepared by "Archer-Elgin"[3] on March 12, 2015. Exhibit A was not contained in any part of the record before us other than the judgment.

On June 12, 2015, Judge Warren entered an amended judgment correcting the legal description. This appeal followed.

In two points on appeal, Lane asserts Judge Warren erred: (1) in awarding the Roberts a 25-foot-wide road easement because there was no substantial evidence to support that finding, and that it was against the weight of the evidence and Judge Sheffield's findings; and (2) that Judge Warren did not have the authority to enter the judgment as there was no stipulation by the parties agreeing to his assignment as successor judge.

---

[3] At some point during the case, "Elgin" engineering became "Archer-Elgin" engineering.

4

**Analysis**

Rule 79.01 states:

> If by reason of going out of office, death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact are filed, then any other judge sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that those duties cannot be performed because such judge did not preside at the trial or for any other reason, such judge may grant a new trial.

"[I]t is well settled that, under Missouri law, a successor judge is without power to render judgment based on testimony and evidence heard by his predecessor absent a stipulation by the parties." *Bauer v. Bauer*, 38 S.W.3d 449, 455 (Mo.App. W.D. 2001) (internal quotations and citations omitted). Where there is no stipulation by the parties to have the case resolved by a successor judge based upon evidence heard by a predecessor, the successor judge has "no authority to enter final judgment . . . and [a judgment based upon evidence heard by the predecessor] must be reversed and remanded for final disposition." *Central Bank of Kansas City v. Costanzo*, 873 S.W.2d 672, 674-75 (Mo.App. W.D. 1994).

There is no record of such a stipulation in this case. Judge Warren relied upon evidence heard by his predecessor and utilized information that was never admitted in evidence. Without a stipulation, Judge Warren was without authority to render his June 12, 2015 judgment. Because the June 12, 2015 judgment relies on such testimony and evidence, and extrinsic matters never admitted in evidence, we must reverse and remand for further proceedings. In the absence of a stipulation among the parties, the trial court must enter a final judgment consistent with the findings of the original trial court that heard the evidence or hold a new trial.

We remand this matter to the trial court for such additional proceedings and additional factual determinations as are necessary, consistent with this opinion.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS